IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| UNIVERSITY GENERAL HEALTH | § | Chapter 11 |
| SYSTEM, INC., et al., | § | |
| | § | Case No. 15-31086 |
| Debtors.[1] | § | |
| | § | Joint Administration Pending |
| | § | |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. §§ 363, 364, AND 507(B); (II) GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362; (III) GRANTING RELATED RELIEF; AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU**

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: University General Health System, Inc. (2436), UGHS Autimis Billing, Inc. (3352), UGHS Autimis Coding, Inc. (3425), UGHS ER Services, Inc. (6646), UGHS Hospitals, Inc. (3583), UGHS Management Services, Inc. (4100)**,** UGHS Support Services, Inc. (3511)**,** University General Hospital, LP (7964)**,** and University Hospital Systems, LLP (3778).

**WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

The debtors and debtors in possession in the above captioned cases (collectively, the "Debtors") hereby move (this "Motion") this Court for entry of an interim order substantially in the form attached hereto as **Exhibit A** (the "Interim Order"), pursuant to Sections 105, 362, 363, 364 and 507(b) of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 4001, (i) authorizing the Debtors to obtain secured post-petition financing; (ii) granting related relief; and (iii) scheduling a final hearing pursuant to Bankruptcy Rule 4001(b) and (c).  In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration of Edward T. Laborde, Jr. in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith.  In further support of this Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

## SUMMARY OF THE MOTION

1.      The Debtors seek immediate authority on an interim basis for a debtor-in-possession secured financing facility ("Post-Petition Financing") to provide funding for the operating expenses and working capital needs of the Debtors.  The Debtors also request a hearing for final approval of the proposed Post-Petition Financing.[2]

---

[2]    Unless specifically defined herein, capitalized defined terms used in this Motion will have the meanings as defined in the Interim Order and the New Loan Agreement, as applicable.

4822349v1

## EMERGENCY CONSIDERATION

2.      The Debtors request emergency consideration of the Motion.  The Post-Petition Financing is necessary to ensure the continued operation of the Debtors' businesses pending a final hearing on this Motion.  Without immediate funding, the Debtors will not be able to continue as a going concern.  Accordingly, the Debtors believe that emergency consideration is necessary.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The legal predicates for the relief requested herein are Bankruptcy Code sections 105, 362, 363, 364, and 507(b), Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 4001.

## BACKGROUND

### I.      The Chapter 11 Cases

5.      On the date hereof (the "Filing Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

6.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

7.      To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

3

8.      Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, their capital raising and restructuring activities and the events leading to the Debtors' decision to file the Chapter 11 Cases, is set forth in detail in the First Day Declaration.

## II.      The Debtors' Prepetition Corporate and Capital Structure

9.      Prior to the Filing Date, certain of the Debtors[3] entered into that certain Credit and Security Agreement (as amended, modified, or supplemented from time to time, the "Prepetition Credit Agreement") with MidCap Funding IV Trust (successor to MidCap Financial, LLC) ("MidCap").   The Prepetition Credit Agreement provided for (i) a secured revolving credit facility of up to an aggregate principal amount of $22,500,000, and (ii) a secured term loan in the principal amount of up to $4,000,000.   (The Prepetition Credit Agreement, together with all collateral and ancillary documents executed in connection therewith are referred to herein as the "Prepetition Loan Documents", and the principal, interest, fees, expenses and other amounts owing under the Prepetition Loan Documents are referred to herein as the "Prepetition Obligations").   The Prepetition Obligations are guaranteed by Debtor University General Health System, Inc., which also in one of the Debtors in the above-captioned Chapter 11 cases.

10.      As of the Filing Date, the Debtors are indebted to MidCap on the Prepetition Obligations in an unpaid principal amount in excess of $14,840,000, plus accrued and accruing interest, fees (including attorney fees), costs, and other amounts owing under the Prepetition Loan Documents.   The Prepetition Obligations are secured by valid, perfected, and

---

[3]     University General Hospital, L.P., UGHS Hospitals, Inc., University Hospital Systems, LLP, UGHS Support Services, Inc., UGHS Autimis Coding, Inc., and UGHS Autimis Billing, Inc.

enforceable liens and security interests in all of the collateral described in the Prepetition Credit Agreement and the other Prepetition Loan Documents, which includes, among other things, first priority liens and security interests in the Debtors' Accounts (as defined in the Prepetition Credit Agreement).

11.     The Debtors' remaining capital structure is described in the First Day Declaration.

## III.    The Process Leading to the Post-Petition Financing

12.     The Debtors conducted a search to identify potential DIP lenders.  Without providing initial work fees or exclusivity, three financial institutions were contacted and, after signing confidentiality agreements, were immediately granted access to an electronic data room. Additional information requests were uploaded to the electronic data room to ensure that all parties were treated equitably throughout the process.  To date, no other party has been able to commit to alternative financing (let alone on terms as favorable than the proposed Post-Petition Financing from MidCap).

13.     The Debtors also negotiated with MidCap to provide post-petition financing.  After these negotiations, MidCap agreed to provide the Post-Petition Financing in accordance with the terms and conditions of the New-Loan Agreement and the Interim Order.

## IV.    The Need For The Post-Petition Financing

14.     The Debtors have a critical need for the Post-Petition Financing.  The Debtors have substantial operating businesses with frequent and significant operating expenses. During the prepetition period, the Debtors' accounts collections (all of which are MidCap collateral) were not always sufficient to meet critical operating expenses at the time such expenses had to be paid (such as recurring payrolls for the Debtors' employees), and the Debtors

5

4822349v1

suffered recurring cash shortfalls.  As the Debtors seek to preserve, stabilize and improve their business operations, the Debtors need financing to provide additional liquidity and adequate cash-flow at the time and in the amounts needed to meet necessary business and reorganization expenses.

15.     The Post-Petition Financing provides all of these things.  Under the Post-Petition Financing, MidCap provides the Debtors with an immediate postpetition advance of $250,000 to improve the Debtors' overall liquidity.  The structure of the Post-Petition Financing also significantly modifies the revolving advance formula under the Prepetition Credit Agreement, and provides the Debtors with immediate and continuing postpetition advances based on collections (the Debtors would not have any borrowing capacity under normal revolving loan advance formulas).  In addition, the Post-Petition Financing provides the Debtors with a continuing swingline borrowing capacity of up to $750,000; this is essential to the Debtors' ability to have access to sufficient funding at the times when critical expenses need to be paid.

16.     In short, the Post-Petition Financing provides the Debtors with: (a) the increased liquidity and continuing borrowing capacity, which is essential for them to meet operating expenses as they work to stabilize their business operations; (b) a financing platform from which the Debtors can ensure employees, vendors, and other parties of their ability to maintain operations and meet expenses in the postpetition environment; and (c) allows the Debtors' management to focus on improving operations and achieving a successful exit from these Chapter 11 cases.

4822349v1

**RELIEF REQUESTED**

17.     By this Motion, pursuant to Bankruptcy Code sections 362, 363, 364, and 507(b), Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rule 4001, the Debtors request the following relief as provided for in the proposed Interim Order:

(a)     authorization for the Debtors to obtain the Post-Petition Financing substantially in the form attached hereto as **Exhibit B** from MidCap (the "New Loan Agreement," and together with all related documents, including any exhibits thereto, the "New Loan Documents")[4] consisting of a revolving loan commitment in the amount of $16,000,000;

(b)     authorization for the Debtors to execute and deliver to MidCap any other document of any kind required to be executed and delivered in connection with the New Loan Agreement;

(c)     authorization for the Debtors to comply with and perform all of the terms and conditions contained in the New Loan Agreement and other New Loan Documents, including repayment of amounts owing, with interest and any other charges, to Midcap in accordance with and subject to the terms and conditions set forth in the New Loan Documents and Interim Order;

(d)     authorization for the Debtors to pay all fees and expenses, including, without limitation, all reasonable fees and expenses of professionals engaged by MidCap, in accordance with the terms of the New Loan Agreement;

(e)     the granting of super-priority claims under section 364(c)(1) of the Bankruptcy Code to MidCap payable from, and having recourse to, all present and after-acquired

---

[4]     As used herein, the term "DIP Loans" refers to any and all credit extended and loans made to the Debtors pursuant to the New Loan Agreement.

personal and real property of the Debtors and all of their respective affiliates (as defined in the New Loan Agreement, "Collateral"), subject only to the Carve-Out (as defined in the Interim Order);

(f)     subject only to and effective upon entry of the Final Order, the limitation of the Debtors' or other parties' right to surcharge collateral pursuant to section 506(c) of the Bankruptcy Code;

(g)     authorization for the Debtors to borrow from MidCap, on the terms and subject to the conditions and limitations in availability set forth in the New Loan Documents and the Interim Order, the DIP Loans as provided in the New Loan Agreement;

(h)     authorization for the Debtors to use the proceeds of the DIP Loans to fund the operation of the Debtors' business, on the terms and subject to the conditions contained in the New Loan Documents and the Interim Order;

(i)     pursuant to Bankruptcy Rule 4001, that an interim hearing on the Motion be held before this Court to consider entry of the Interim Order authorizing the Debtor, on an interim basis, to obtain immediate postpetition financing from MidCap under the New Loan Documents and the Interim Order (including the relief request outlined in this Motion), in accordance with the budget prepared by the Debtors (the "Budget"), a copy of which will be filed as a supplement to this Motion prior to the Interim Hearing; and

(j)     that this Court schedule a final hearing (the "Final Hearing") to consider entry of the Final Order authorizing on a final basis, inter alia, the Post-Petition Financing.

8

# RELIEF REQUESTED

## I.      Summary of Post-Petition Financing[5]

18.      The Debtors have been unable to obtain post-petition financing on an unsecured basis.  After negotiation, the Debtors have reached an agreement with MidCap to provide postpetition financing under the terms and conditions stated in the New Loan Agreement and proposed Interim Order.  The Debtors negotiated the Post-Petition Financing at arm's-length and have determined that it is the best proposal under the circumstances. The principal terms of the Post-Petition Financing are as follows:

| | |
|---|---|
| **Agent and Lender:** | MidCap |
| **Borrowers:** | Debtors University General Health System, Inc., UGHS Autimis Billing, Inc., UGHS Autimis Coding, Inc., UGHS Hospitals, Inc., UGHS Management Services, Inc., UGHS Support Services, Inc., University General Hospital, LP, and University Hospital Systems, LLP, UGHS ER Services, Inc. |
| **Loan Amount:** | Revolving Loan Commitment of $16,000,000 |
| **Maturity Date:** | The DIP Loans mature on the Commitment Expiry Date. ("Commitment Expiry Date," as defined in the New Loan Agreement, means the earliest of (a) the date twelve (12) months from the date of the New Loan Agreement, (b) the effective date of any sale of all or substantially all of the assets of University General Hospital, LP, (c) the Plan Effective Date, or (d) the date thirty (30) days after the Bankruptcy Court enters an order confirming a Plan of Reorganization in the Bankruptcy Cases.) |
| **Use of Proceeds:** | To finance ongoing debtor in possession working capital needs in accordance with the New Loan Agreement and the Interim Order, to allow payment of certain costs of administration of the Chapter 11 Cases in accordance with the Budget and the Interim Order, to pay fees, expenses and other amounts due to Agent and Lenders pursuant to Section 2.2 of the New Loan Agreement, all subject to the terms and |

---

[5]      The description provided herein is a summary of principal terms of the Post-Petition Financing. Please refer to the New Loan Documents and the Interim Order, which are not in any way amended or limited by the summary in this Motion, for exact terms and conditions.  To the extent of any inconsistencies between this summary and the terms of the New Loan Documents and Interim Order, the terms of the New Loan Documents and the Interim Order control.

4822349v1

| | |
|---|---|
| | conditions stated in the New Loan Agreement. |
| **Non-Default Interest Rate:** | Rate equal 3.5% over the greater of: (i) one month LIBOR; or (ii) 2%. |
| **Default Interest Rate:** | 3.0% per annum in excess of the rates otherwise payable under the New Loan Agreement. |
| **Collateral:** | All present and after-acquired personal and real property of the Debtors and all of their respective affiliates, including, among other things, a first priority priming lien on the Debtors' Accounts, but excluding avoidance actions. |
| **Super-Priority Claims:** | Super-priority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code for the payment of all obligations under the Post-Petition Financing, subject only to the Carve-Out. |
| **Carve-Out:** | The Liens and Super-Priority Claims granted to MidCap pursuant to the New Loan Agreement and the Interim Order shall be subject only to the following (collectively, the "Carve-Out"): |

(i)     After the Termination Date of the New Loan Agreement (a "Carve-Out Event"), the payment of allowed professional fees and disbursements incurred by the professionals retained, pursuant to Bankruptcy Code §§327 or 1103(a), by the Debtors and any statutory committees, patient care ombudsman, trustee, examiner or other representative or professional appointed in the Bankruptcy Cases, and any unpaid fees of the United States Trustee, in an aggregate amount not to exceed $250,000 (the "Professional Fees"), exclusive of any retainers already paid by the Debtors, and exclusive of any amounts funded to the Debtors pursuant to the New Loan Agreement which are held and segregated by the Debtors for payment of estate professionals.  Of the $250,000 carve-out for Professional Fees, a minimum of $50,000 shall be specifically dedicated to any outstanding fees and expenses of Porter Hedges LLP.

(ii)    The Liens (but not the Super-Priority Claims) granted pursuant to the Interim Order to MidCap shall be further subject and subordinate to the Prepetition Senior Liens to the extent they encumber assets other than the Debtors' Accounts.

(iii)   The Carve-Out will not be available to pay Professional Fees and/or disbursements incurred in connection with the assertion of any claims or causes of action against MidCap, including without limitation any avoidance action under Chapter 5 of the Bankruptcy Code, any objection or other challenge to the amount, validity or enforceability of any claims or liens of MidCap, or any discovery proceedings in anticipation thereof.

(iv)    The Carve-Out will not be available if and to the extent that the Debtors have other unencumbered or less than fully

10

| | | |
|---|---|---|
| | | encumbered assets available to pay Professional Fees when such fees are approved by the Court for payment by a final, and non-appealable order . |
| | (v) | None of the DIP Loans or proceeds therefrom and none of the cash collateral subject to liens or security interests in favor of MidCap (notwithstanding the Carve-Out) may be used to fund, directly or indirectly, any effort to: (i) object to or contest in any manner, or raise any defenses to the validity, perfection, priority or enforceability of the Obligations owing to MidCap, or the liens in favor of MidCap securing such Obligations; (ii) object to or contest in any manner, or raise any defenses to the validity, perfection, priority or enforceability of the Prepetition Obligations owing to MidCap, or the liens in favor of MidCap securing the Prepetition Obligations; or (iii) assert any claims or causes of action against MidCap of any type, including, without limitation, any avoidance actions under Chapter 5 of the Bankruptcy Code, or any claim or cause of action against MidCap in its capacity as lender under the Post-Petition Financing, the Prepetition Credit Agreement or otherwise. |

## II.     Significant Provisions of the Post-Petition Financing Governed by Rule [4(C)(vii)] of the Southern District of Texas Procedures for Complex Chapter 11 Cases

19.     As a condition to obtaining the proposed financing, MidCap and the Debtors have agreed to certain provisions that may be considered significant provisions to be highlighted to the Court and the parties in interest for purposes of the Court's complex procedures for chapter 11 cases.[6]  These provisions include:

- Cross-Collateralization.  The Liens granted to MidCap under the Post-Petition Financing secure the Obligations under the Post-Petition Financing and the Prepetition Obligations.  See Interim Order at ¶9.

---

[6]     The descriptions provided herein are a summary of significant provisions of the Post-Petition Financing. Please refer to the New Loan Documents for exact terms and conditions.

4822349v1

- <u>Application of Collections</u>.  Collections from Accounts and other rights to payment are applied to the reduction of the Prepetition Obligations.  <u>See</u> Interim Order at ¶¶4-5.

- <u>Validity of Liens</u>.  The Debtors waive and release, and are barred from asserting, any right to object to, challenge or seek to avoid, the amount, validity, or enforceability of the Prepetition Obligations or MidCap's liens and security interests in the collateral securing the Prepetition Obligations.  The Interim Order provides a period of 75 days from the Filing Date for a Committee to object to, challenge, or seek to avoid the amount, validity, or enforceability of the Prepetition Obligations of MidCap's liens and security interests in the collateral securing the Prepetition Obligations.  <u>See</u> Interim Order at ¶30.

- <u>Section 506(c) Waiver</u>.  Subject only to and effective upon entry of the Final Order, and except as expressly provided in such Order, the Debtors and other parties will not be permitted to surcharge MidCap's Collateral under §506(c) or obtain a lien with respect to the Collateral which is equal or senior to the Liens of MidCap on the Collateral.  <u>See</u> Interim Order at ¶11.

- <u>Reorganization Milestones</u>.  The New Loan Agreement provides that the Debtors will file either an Asset Sale Motion or a Plan of Reorganization on or before June 15, 2015.   <u>See</u> New Loan Agreement at definition of "Reorganization Milestones."

- <u>Super-Priority Administrative Expense</u>.  MidCap is granted super-priority administrative expense status with respect to the Obligations under the New

Loan Documents, with, among other things, priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§503(b), 507(b) and 546(c).  <u>See</u> Interim Order at ¶8.

- <u>Priming of Liens</u>.  Pursuant to Bankruptcy Code Section 364(d)(1), MidCap's first priority Lien in pre-petition and post-petition Accounts of the Debtors (and proceeds therefrom) will be senior to and prime any valid lien (if any) asserted by any Governmental Authority or any other creditor with respect to the Accounts of the Debtors.  <u>See</u> Interim Order at ¶9.  The Debtors do not believe any party other than MidCap has a valid lien on the Debtors' Accounts.

Each of the provisions of the Post-Petition Financing outlined above are reasonable and appropriate under the facts and circumstances of these cases.  As an initial matter, and as discussed above, the Post-Petition Financing is not only beneficial to the Debtors, it is essential to their ability to preserve and improve their business operations and successfully proceed in these Chapter 11 cases.  The terms outlined above (as well as the other terms and conditions of the New Loan Agreement and the Interim Order) are required terms of the Post-Petition Financing.

MidCap holds a blanket first position prepetition lien in the personal property (including Accounts) which is the subject of the postpetition Liens granted under the Post-Petition Financing.  The Debtors do not believe that any other party holds a valid or senior lien on such property.  Accordingly, the Liens granted to MidCap under the Interim Order are consistent in scope with the prepetition liens held by MidCap.  Moreover, and to the extent other parties may be affected by the MidCap Liens, their interests are adequately protected because the

13

Post-Petition Financing allows the Debtors to continue their business operations, generate new Accounts through such operations, and preserve and enhance the overall value of the Debtors' estates for the benefit of all parties.   In all events, the Post-Petition Financing provides a Lookback Period for a Committee to review and challenge the Prepetition Obligations and the prepetition liens securing such obligations, so the Liens, application of Accounts proceeds, and other features of the Post-Petition Financing do not insulate MidCap's prepetition obligations or liens from scrutiny.   Finally, the Reorganization Milestones are consistent with the Debtors' expectations of how they will progress through these cases.

## APPLICABLE AUTHORITY

**I.     The Post-Petition Financing Should be Approved**

**A.     The Terms of the New Loan Documents Are Fair, Reasonable, and Appropriate**

20.     As discussed in detail above, the Post-Petition Financing is essential to the success of these Chapter 11 cases, and the Debtors believe that the terms and conditions of the Post-Petition Financing are fair, reasonable, and appropriate under the circumstances.   Among other things, the Debtors believe the interest rate and other economic terms of the Post-Petition Financing are very favorable to the Debtors.

21.     The Post-Petition Financing provides an ability (subject to the Budget) for the Debtors to borrow funds for payment of ongoing professional and other case administration claims, and the Interim Order provides for the Carve-Out for Professional Fees.   Such carve outs generally "preserve the adversary system" by ensuring that the committees and the debtor's estate are adequately assisted by counsel.   See In re Ames Dep't Stores, Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).   The Carve-Out protects against administrative insolvency during the course of the Chapter 11 Cases by ensuring that some assets remain for the payment of United

14

4822349v1

States Trustee fees and certain professional fees of the Debtors, notwithstanding the Liens and superpriority administrative claims provided for under the Post-Petition Financing.

22.     As discussed above, the Post-Petition Financing provides the Debtors with essential liquidity they need to operate their businesses during the Chapter 11 Cases.   The Debtors' request for interim authorization of the Post-Petition Financing seeks authorization for the postpetition DIP Loans that are necessary to avoid immediate and irreparable harm to the value of the Debtors' assets in accordance with Rules 4001(b)(2) and 6003 of the Bankruptcy Rules and the provisions of the Complex Case Procedures.

23.     The Post-Petition Financing will be used by the Debtors to fund reasonable and necessary business expenses – expenses that will allow the Debtors to continue business operations and preserve value for creditors – all in accordance with the Budget. The Budget itemizes the sources and uses of cash and provides a projection of cash receipts and expenditures. The Budget includes a list of business expenses that are reasonable and necessary and that must be paid in order to continue the Debtors' business operations.   The Post-Petition Financing and the Interim Order also provide parameters for variances from the Budget that are adequate to give the Debtors the operational flexibility they need.

24.     After thorough analysis by the Debtors and their advisors, they have concluded that the terms of the Post-Petition Financing are reasonable and appropriate under the circumstances. Bankruptcy courts routinely defer to a debtor's business judgment in considering whether to approve the debtor's request to obtain postpetition financing.  See e.g., Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.), 163 B.R. 964, 974 (Bankr. D. Del. 1994) (quoting order approving post-petition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); In re Ames Dep't Stores, Inc., 115

15

B.R. at 40 (The court should defer to debtor's "reasonable business judgment . . . so long as the financing agreement does not . . . leverage the bankruptcy process" and its purpose is to benefit the estate rather than another party-in-interest.).

25.     The Debtors exercised their reasonable business judgment in determining that the Post-Petition Financing is the best financing option available under the present circumstances, and the Debtors have satisfied the legal requirements to incur the obligations arising under the Post-Petition Financing on the terms and conditions set forth therein. The Debtors believe that the New Loan Documents contain terms that are fair, reasonable, and in the best interests of the Debtors and their estates. Accordingly, the Debtors respectfully submit that they should be authorized to enter into the New Loan Documents and obtain access to the Post-Petition Financing on the terms described therein.

**B.     The Debtors Should Be Authorized to Obtain Postpetition Financing on a Senior Secured and Superpriority Basis**

26.     Section 364 of the Bankruptcy Code allows a debtor to obtain (a) unsecured credit in the ordinary course of business, (b) unsecured credit outside the ordinary course of business, (c) credit with specialized priority or with certain security interests, and (d) secured credit by granting a senior or *pari passu* lien on already encumbered property. In other words, section 364 is "structured with an escalating series of inducements . . ." that may be offered to attract postpetition financing. Sapir v. CPQ Colorchrome Corp. (In re Photo Promotion Assocs., Inc.), 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), aff'd, 881 F.2d 6 (2d Cir. 1989). Accordingly, if a debtor cannot obtain postpetition financing on an unsecured basis under sections 364(a) and (b), the bankruptcy court may authorize a debtor to obtain postpetition financing on a superpriority administrative expense basis pursuant to section 364(c), secured by a senior lien on unencumbered property or secured by a junior lien on encumbered property.

16

4822349v1

27.     Courts consider various factors in determining whether a debtor may obtain postpetition financing under section 364(c) of the Bankruptcy Code, including whether (i) the debtor is unable to obtain secured credit under section 364(b), (ii) the credit transaction is necessary to preserve the assets of the estate, (iii) the terms of the transaction are fair, reasonable and adequate given the circumstances of the debtor-borrower and the proposed lender, (iv) entry into the financing constitutes an exercise of the debtor's sound and reasonable business judgment, and (v) the financing was negotiated in good faith and at arm's-length between the debtor and the lender.  In re Farmland Indus., Inc., 294 B.R. 855, 879-81 (Bankr. W.D. Mo. 2003); see also In re Aqua Assocs., 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying factors 1-3).

28.     To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis.  Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Id.  When few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing."  In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Savs. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n. 4 (N.D. Ga. 1989); see also In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (approving financing facility and holding that the debtor made reasonable efforts to satisfy the standards of section 364(c) where it approached four lending institutions, was rejected by two, and selected the most favorable of the two offers it received).

17

4822349v1

29.     The Debtors' assets (including their Accounts) are fully encumbered under the Prepetition Loan Documents; accordingly the Debtors cannot procure sufficient debtor in possession financing in the form of either unsecured credit under Bankruptcy Code §§ 364(a) or (b), solely in exchange for the grant of an administrative expense or superpriority administrative expense claim, or on a junior lien basis under section 364(c) of the Bankruptcy Code.   No potential lenders were willing to commit to postpetition financing on such terms.

30.     The Debtors believe the terms of the Post-Petition Financing are reasonable and beneficial; the Debtors do not believe they could obtain debtor in possession financing on more favorable terms from other sources.  See, e.g., Bray v. Shenandoah Fed. Savs. & Loan Ass'n, 789 F.2d at 1088 (Section 364 "imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable.").

## C.     The Debtor Should Be Authorized to Obtain Postpetition Financing Secured by Priming Liens on Accounts

31.     If the incentives available under Section 364(c) are insufficient to attract post-petition financing, a bankruptcy court may authorize post-petition credit under section 364(d) secured by a senior or *pari passu* lien on encumbered property (i.e., a "priming" lien) without consent from the affected lienholders if (i) the debtor cannot otherwise obtain credit and (ii) the interests of the existing lienholders are adequately protected.  See 11 U.S.C. § 364(d)(1); In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992); In re Aqua Assocs., 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) (listing the above factors and also requiring that the "credit transaction" be "necessary to preserve assets of the estate").

32.     The Debtors approached several institutions to serve as potential financing sources, conducted arm's length negotiations with each of them, and ultimately determined that MidCap offered the best available option for obtaining postpetition financing.  In fact, no

potential lenders were willing to provide postpetition financing without senior liens on the Debtors' assets, which is not feasible in light of the existing senior liens of MidCap securing the Prepetition Obligations.  Because MidCap already holds first position liens on the Debtors' assets (including Accounts), the priming liens in Accounts required by MidCap is more limited in scope than the priming liens sought by other potential lenders. MidCap already holds a first position lien on Accounts, and the Post-Petition Financing allows the Debtors to continue to operate and generate new Accounts.  The Debtors, therefore, do not believe that any existing creditors are harmed by such priming.

## II.    Modification of the Automatic Stay is Warranted

33.    Subject only to entry of a Final Order, the Post-Petition Financing will provide for modification of the automatic stay to allow MidCap to enforce its rights if there is an Event of Default.  <u>See</u> Interim Order at ¶14.  Stay modification provisions of this sort are ordinary features of postpetition financing arrangements, and, in the Debtors' business judgment, are reasonable under the circumstances. <u>See</u>, <u>e.g.</u>, <u>In re MPF Holdings US LLC</u>, Case No. 08-36084 (Bankr. S.D. Tex. Feb. 18, 2009) (final order modifying automatic stay); <u>see also</u> <u>In re United Retail Grp., Inc.</u>, Case No. 12-10405 (Bankr. S.D.N.Y. Feb. 22, 2012); <u>In re MSR Resort Golf Course LLC</u>, Case No. 11-10372 (Bankr. S.D.N.Y. Jan. 25, 2012); <u>In re InSight Health Servs. Holdings Corp.</u>, Case No. 10-16564 (Bankr. S.D.N.Y. Jan. 4, 2011); <u>In re Gen. Growth Props. Inc.</u>, Case No. 09- 11977 (Bankr. S.D.N.Y. May 14, 2009); <u>In re Tronox Inc.</u>, Case No. 09-10156 (Bankr. S.D.N.Y. Feb. 6, 2009).

## III.    The Debtors Require Immediate Access to the Post-Petition Financing

34.    The Court may grant interim relief in respect of a motion filed pursuant to Bankruptcy Code sections 363(c) or 364 where, as here, interim relief is "necessary to avoid

immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2). In examining requests for interim relief under this rule, courts generally apply the same business judgment standard applicable to other business decisions. See Ames Dep't Stores, 115 B.R. at 36.

35.     The Debtors and their estates will suffer immediate and irreparable harm if the interim relief requested herein, which allows the Debtors to immediately access DIP Loans under the Post-Petition Financing, is not granted promptly after the Filing Date. The Debtors have insufficient cash to fund operations without immediate access to the Post-Petition Financing. Further, the Debtors anticipate that the commencement of these Chapter 11 Cases will immediately increase the Debtors' immediate cash needs as a result of, among other things, the costs of administering the Chapter 11 Cases, addressing key constituents' concerns regarding the Debtors' financial health and ability to continue operations in light of the cases and making the payments authorized by other orders entered granting the Debtors' first day motions.

36.     Accordingly, the Debtors have an immediate need for access to the Post-Petition Financing on an interim basis to, among other things, continue the operation of their business, meet payroll, pay capital expenditures, procure goods and services from vendors and suppliers, fund the costs of these Chapter 11 cases, and otherwise satisfy their working capital and operational needs, all of which is required to preserve and maintain enterprise value for the benefit of all parties in interest.

37.     The importance of a debtor's ability to secure postpetition financing to prevent immediate and irreparable harm to its estate has been repeatedly recognized in this and other districts in similar circumstances. See, e.g., In re N. Bay Gen. Hosp., Inc., Case No. 08-20368 (Bankr. S.D. Tex. July 11, 2008) (order approving postpetition financing on an interim

basis); In re MPF Holding US LLC, Case No. 08-36084 (Bankr. S.D. Tex. Feb. 3, 2009) (same); see also In re United Retail Grp., Inc., Case No. 12-10405 (Bankr. S.D.N.Y. Feb. 2, 2012) (order approving postpetition financing on an interim basis); In re MSR Resort Golf Course LLC, Case No. 11-10372 (Bankr. S.D.N.Y. Mar. 16, 2011) (same); In re Great Atl. & Pac. Tea Co., Case No. 10-24549 (Bankr. S.D.N.Y. Dec. 13, 2010) (same); In re The Reader's Digest Assoc., Case No. 09-23529 (Bankr. S.D.N.Y. Aug. 26, 2009) (same). Accordingly, for the reasons set forth above, prompt entry of the Interim Order is necessary to avert immediate and irreparable harm to the Debtors' estates and is consistent with, and warranted under Bankruptcy Rule 4001(b) and (c).

## IV.    Request for Final Hearing

38.    Pursuant to Bankruptcy Rule 4001(c), the Debtors request that the Court set a date that is no later than 30 days after the entry of the Interim Order as a final hearing for consideration of entry of the Final Order.

39.    The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the parties listed below in the Notice section. The Debtors further request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(c)(2).

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

40.    The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the

4822349v1

relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

41.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to MidCap; (c) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases; (d) all other parties listed in the notice paragraph of the Interim Order; and (e) any such other party entitled to notice pursuant to the Local Rules.  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

42.     No previous request for the relief sought herein has been made to this Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

4822349v1

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested in this Motion and enter the Interim Order in the form attached hereto, schedule a final hearing to consider entry of a Final Order, and grant such other and further relief as may be just and proper.

Dated: **March 1, 2015**
       **Houston, Texas**

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/* Joshua W. Wolfshohl
John Higgins
State Bar No. 09597500
Joshua W. Wolfshohl
State Bar No. 24038592
Aaron J. Power
State Bar. No. 24058058
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 228-1331 (fax)

**Proposed Counsel for Debtors and Debtors in Possession**

4822349v1