

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| | ) |
| UNIVERSITY GENERAL HOSPITAL SYSTEM, INC., ET AL., | ) CASE NO. 15-31086-H3-11 |
| | ) |
| Debtors,[1] | ) Jointly Administered |
| | ) |

MEMORANDUM OPINION

The court has held a final hearing on the "Debtors' Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105(a), 363, 507(a), 541, 1107(a) and 1108, and Fed. R. Bankr. P. 6003 and 6004, to, Inter Alia, (I) Authorize, but Not Direct, the Debtors to Pay Prepetition Wages, Compensation and Employee Benefits; (II) Authorize, but Not Direct, the Debtors to Continue Certain Employee Benefit Programs in the Ordinary Course; and (III) Direct All Banks to Honor Prepetition Checks for Payment of Prepetition Employee Obligations " (Docket No. 6). The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered granting in part, and denying in part, the requested relief.  To the extent any of

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: University General Health System, Inc. (2346), UGHS Autimis Billing, Inc. (3352), UGHS Autimis Coding, Inc. (3425), UGHS ER Services, Inc. (6646), UGHS Hospitals, Inc. (3583), UGHS Management Services, Inc. (4100), UGHS Support Services, Inc. (3511), University General Hospital, LP (7964), and University Hospital Systems, LLP (3778).

the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

## Findings of Fact

University General Hospital System, Inc., and eight other related entities ("Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code on February 27, 2015. The cases are jointly administered.

In the instant motion, Debtors seek to pay prepetition wages of their employees. Debtors assert that payment of the prepetition wages is "critical to the Debtors' ability to care for their patients and, therefore, to the maximization of the value of the Debtors' estates." (Docket No. 6).

On March 2, 2015, one business day after the date of filing of the petition, the court held a preliminary hearing on the instant motion. After the preliminary hearing, at which counsel for Debtors presented a proffer of the testimony of Edward T. Laborde, Jr., Debtors' general counsel, the court entered an interim order granting the relief requested in part. The order provides in pertinent part:

> 3. The Debtors are authorized, but not directed to, pay and/or honor (including to any third parties that provide or aid in the monitoring, processing or administration of the Prepetition Employee Obligations), in their discretion, the Prepetition Employee Obligations, including wages, salaries, current withholding and payroll-related taxes, paid time off, and medical and insurance benefit plans

>  (excluding life insurance), as and when such obligations are due and consistent with the Debtors' ordinary course of business; provided, however, pursuant to this Interim Order only employees currently employed by the Debtors shall be entitled to such payment(s); and no employee may receive payment(s) of amounts in excess of the limits provided for under 11 U.S.C. §§ 507(a)(4) or 507(a)(5).

(Docket No. 35).

Debtors presented no additional evidence at the final hearing on the instant motion.

At the final hearing on the instant motion, counsel for Debtors stated that, despite the prohibition of payments in excess of the limits provided for under 11 U.S.C. §§ 507(a)(4) or 507(a)(5), Debtors had in fact paid one employee amounts in excess of the limits.[2] Counsel for Debtors stated that Debtors paid April Sooknanan $15,771 for prepetition compensation. He stated that the amount paid represents a "cashing-out" of accrued paid time off for Ms. Sooknanan, when she switched from full time to part time employment.

---

[2] Although counsel for Debtors described the non-compliance with this court's order as "inadvertent," it is disturbing in context. Counsel for Debtors stated that, prepetition, Debtors had the payroll "put in place," presuming that this court would grant the relief requested in the instant motion without alteration, and just inadvertently failed to observe that the payments made would violate the order actually entered. The court notes also that counsel for Debtors has filed an amended motion seeking relief, after such relief has been denied, with arguments that essentially restate the arguments raised in the initial motion. See e.g., Docket No. 12. And counsel appears to have added to the hearing agenda for March 30, 2015, a motion (Docket No. 87) whose hearing was already complete, apparently simply because there had been no immediate ruling.

Conclusions of Law

Section 105(a) of the Bankruptcy Code permits the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

However, the power granted to the court under Section 105 "must be exercised in a manner that is consistent with the Bankruptcy Code." In re Oxford Mgmt., Inc., 4 F.3d 1329 (5th Cir. 1993).

In Oxford Management, the Fifth Circuit held that the bankruptcy court's order allowing payment of prepetition commissions to real estate brokers immediately, rather than through a plan, was contrary to the provisions of the Bankruptcy Code, because it deviated from the pro-rata scheme of distribution in the Bankruptcy Code.

After the Fifth Circuit issued its opinion in Oxford Management, courts have carved out narrow exceptions to the general rule that prepetition claims should not be paid prior to confirmation of a plan.  It may be proper to pay prepetition wages entitled to priority under Section 507(a)(4) of the Bankruptcy Code, based on "the presence of a legal or factual inevitability of payment."  In re Equalnet Communications Corp., 258 B.R. 368 (Bankr. S.D. Tex. 2000).

Section 507(a)(4)(A) of the Bankruptcy Code grants

fourth priority to claims to the extent of $12,475 for "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual."  11 U.S.C. § 507(a)(4)(A).

The exception set forth in <u>Equalnet Communications</u> does not justify the payment of prepetition compensation to Ms. Sooknanan in excess of the priority limit under Section 507(a)(4) of the Bankruptcy Code.  The excess over the priority limit is a general unsecured claim which should share payment pro-rata with other general unsecured claims.  The court concludes that the relief requested should be granted, except as to the amount paid to Ms. Sooknanan in excess of the priority limit of Section 507(a)(4) of the Bankruptcy Code.

Based on the foregoing, a separate Judgment will be entered granting in part, and denying in part, the requested relief.

Signed at Houston, Texas on March 31, 2015.

*Letitia Z. Paul*
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE