IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE : | § | |
| | § | Chapter 11 |
| UNIVERSITY GENERAL HEALTH SYSTEM, INC., <u>et al.</u>, | § § | Case No. 15-31086 |
| | § | |
| Debtors.[1] | § | Jointly Administered |

### FEE APPLICATION COVER SHEET FOR APPLICATION OF INVESTMENT BANKER HAMMOND HANLON CAMP, LLC FOR <u>ALLOWANCE OF COMPENSATION</u>

**A HEARING HAS BEEN REQUESTED ON THIS MATTER FOR JANUARY 11, 2016 AT 1:00 PM IN COURTROOM 401, 515 RUSK AVENUE, 4TH FLOOR, HOUSTON TEXAS.**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 23 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

| | | |
|---|---|---|
| **Name of Applicant:** | Hammond Hanlon Camp, LLC | |
| **Applicant's role in case:** | Debtors' Investment Banker | |
| **Indicate Whether this is an application for pre or post confirmation services** | Pre-Confirmation | |
| **Date order of employment signed:** | 4/27/2015 | |
| | **Beginning of Period** | **End of Period** |

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: University General Health System, Inc. (7964), UGHS Autimis Billing, Inc. (3352), UGHS Autimis Coding, Inc. (3425), UGHS ER Services, Inc. (6646), UGHS Hospitals, Inc. (3583), UGHS Management Services, Inc. (4100), UGHS Support Services, Inc. (3511), University General Hospital, LP (7964), and University Hospital Systems, LLP (3778).

2

| | | |
|---|---|---|
| **Time period covered by this Application:** | 2/27/15 | 12/31/15 |
| **Time period(s) covered by prior Applications:** | n/a | n/a |
| **Total amounts awarded in all prior Applications:** | | n/a |
| **Total fees requested in this Application and in all prior Applications:** | | $1,970,000 |
| **Total fees requested in this Application:** | | $1,970,000 |
| **Total actual professional hours covered by this Application:** | | n/a |
| **Average hourly rate for professionals:** | | n/a |
| **Total paraprofessional fees requested in this Application:** | | n/a |
| **Total actual paraprofessional hours covered by this Application:** | | n/a |
| **Average hourly rate for paraprofessionals:** | | n/a |
| **Reimbursable expenses sought in this application:** | | $147,936.46 |
| **Indicate whether plan has been confirmed** | | No (confirmation hearing set for 1/11/2016) |
| **If a plan has been proposed, total to be paid to unsecured creditors under the plan** | | > $1,000,000 |
| **If a plan has been proposed, percentage dividend to unsecured creditors under the plan** | | 1% |
| **If a plan has been proposed, total to be paid to all pre-petition creditors under the plan** | | $25-30 million |
| **Date of confirmation hearing** | | 1/11/2016 |

5215271v2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE : | § | |
| | § | Chapter 11 |
| UNIVERSITY GENERAL HEALTH | § | |
| SYSTEM, INC., <u>et al.</u>, | § | Case No. 15-31086 |
| | § | |
| Debtors.1 | § | Jointly Administered |

**FIRST AND FINAL APPLICATION OF INVESTMENT BANKER HAMMOND HANLON CAMP, LLC FOR ALLOWANCE OF COMPENSATION**

**To the Honorable Letitia Z. Paul,
United States Bankruptcy Judge:**

Hammond Hanlon Camp, LLC ("H2C") files this First and Final Application for Allowance of Compensation ("Application") for the period from February 27, 2015 to December 31, 2015

**Overview**

1.  The Debtors employed H2C as their investment banker to assist them in pursuing transactions crucial to the success of these chapter 11 cases. The terms of H2C's retention are set forth in an engagement agreement dated February 8, 2015 (the "Engagement Agreement"). A copy of the Engagement Agreement is attached as **Exhibit A** to this Application. The Court approved H2C's retention pursuant to the Engagement Agreement on April 27, 2015 [Doc. No. 278].

**Background**

A.  **General Background**

2.  On February 27, 2015 (the "Petition Date"), the Debtors each filed a voluntary

---

1    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: University General Health System, Inc. (7964), UGHS Autimis Billing, Inc. (3352), UGHS Autimis Coding, Inc. (3425), UGHS ER Services, Inc. (6646), UGHS Hospitals, Inc. (3583), UGHS Management Services, Inc. (4100), UGHS Support Services, Inc. (3511), University General Hospital, LP (7964), and University Hospital Systems, LLP (3778).

5215271v2

petition for relief under Chapter 11 of the Bankruptcy Code.[2] The Debtors continued to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code up until December 31, 2015.

3. On March 4, 2015, the Court entered an Interim Order (I) Authorizing Secured Post-Petition Financing on a Super Priority Basis Pursuant to 11 U.S.C. §§ 363, 364, and 507(b); (II) Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. 362; (III) Granting Related Relief, and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 [Doc. No. 57].

4. On March 5, 2015, pursuant to the Interim DIP Order, the Debtors, as borrowers, executed a Debtor in Possession Credit and Security Agreement with MidCap Financial Trust ("MidCap"), as administrative agent and a lender (the "DIP Credit Agreement").

5. On April 27, 2015, the Court entered an order authorizing the Debtors to employee H2C as investment banker to the Debtors [Doc. No. 278].

6. On July 13, 2015, this court entered a Final Order (I) Authorizing Secured PostPetition Financing on a Super Priority Basis Pursuant to 11 U.S.C. § 363, 364 and 507(b); (II) Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362; and (III) Granting Related Relief [Doc. No. 423]. Subsequently, the Court approved three amendments to the DIP Credit Agreement. The total amount of the Debtor in Possession financing provided by MidCap under the DIP Credit Agreement was $16,000,000.00 (the "DIP Financing").

7. On November 9, 2015, this Court entered its Order (A) Authorizing and Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (B) Approving the Asset Purchase Agreement, (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related

---

[2] For a detailed description of the Debtors' businesses, the Debtors' capital structure and the events leading up to these cases, see the Declaration of Edward T. Laborde, Jr. in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 2].

Relief [Doc. No. 691] (the "Sale Order"). The Sale Order approved the sale (the "Sale") of substantially all the Debtors' assets to Foundation Surgical Hospital Holdings, LLC ("Foundation") at a sale price of $33,000,000 (the "PSA"). The Sale closed on December 31, 2015. The Sale represents the culmination of a lengthy and competitive sale and bidding process conducted by the Debtors since the very beginning of these Bankruptcy Cases. The Debtors now seek to confirm a plan of liquidation and quickly move these cases to their conclusion.

### B. H2C's Role

8. The services that H2C provided were necessary to enable the Debtors to maximize the value of their estates throughout these chapter 11 proceedings, specifically, by assisting the Debtors in obtaining DIP financing through the DIP Credit Agreement and by assisting with the Sale. H2C's efforts were focused on tasks related to financial and other advisory services, including the following:

   a. Assisting in identifying and securing debtor in possession financing to provide operating funds during these chapter 11 proceedings and to refinance existing indebtedness;

   b. Assisting in selling substantially all of the assets of the Debtors;

   c. Assisting management, as needed, with regard to making decisions with respect to all aspects of management and operations;

   d. Assisting in the development of a chapter 11 plan;

   e. Communicating with outside constituents, including professionals hired by the Debtors' lenders and the creditors' committee;

   f. Assisting as needed in supervising the Debtors' books and records;

   g. Assisting, as needed, in preparing the Debtors' budgets and cash flow forecasts; and

   h. Assisting, as needed, with the Debtors' bankruptcy reporting.

**Retainer and Prior Requests for Allowance of Compensation**

5

9.      H2C did not receive a retainer in this case.  This is H2C's first and final application for compensation for services provided to the Debtors.  Pursuant to its Engagement Agreement, H2C has been paid $647,936.46, representing its accrued monthly fees and expenses incurred since the Petition Date.

### Amount of Fees and Expenses Requested

10.     This Application seeks compensation for H2C's professional services rendered from February 27, 2015 to December 31, 2015.  The Debtors agreed to compensate H2C as follows pursuant to the Engagement Agreement (the "Compensation Structure"):

a.  <u>Monthly Fee</u>.  During the term of the Engagement Agreement, while the Debtors remain in chapter 11, a monthly advisory fee of $50,000.

b.  <u>DIP Financing Fee</u>.  A DIP Financing Fee of the greater of $400,000 or 3% of the amount of the DIP shall be due and payable upon the closing of the DIP Financing documents.

c.  <u>Transaction Fee for the Sale of the Debtors or a Confirmation of a Plan of Reorganization under Chapter 11 of the Bankruptcy Code</u>.  A transaction fee equal to the greater of $500,000 or 3% of the Aggregate Consideration[3] upon the closing of the transaction.

11.     Additionally, the Debtors agreed to reimburse H2C, upon H2C's request from time to time, for all expenses incurred by H2C in entering into and performing services pursuant to the Engagement Agreement, including, without limitation, the fees, disbursements, and other charges of H2C's legal counsel.

12.     A chart summarizing H2C's fees and expenses is included below:

| Expense | Amount |
| --- | --- |
| March 2015 to December 2015 Monthly Advisory Fees | $500,000.00 |

---

3       As set forth above, H2C has already been paid $647,936.46.  Accordingly, H2C seeks approval of amounts previously paid, plus an additional $1,470,000.00 representing the DIP Financing Fee and Transaction Fee under the Engagement Agreement.

6

5215271v2

| Expense | Amount |
|---|---|
| DIP Financing Fee in the amount of 3% of the amount of the DIP | $480,000.00 |
| Transaction Fee for the Sale of UGHS in the amount of 3% of the Aggregate Consideration | $990,000.00 |
| Post-Petition Expenses | $147,936.46 |
| TOTAL | $2,117,936.46 |

## Accomplishments

13.     H2C's efforts from February 27, 2015 to December 31, 2015 facilitated the Debtors' successful negotiation of DIP Financing in the amount of $16,000,000.00. Additionally, H2C assisted the Debtors in successfully marketing the Debtors' assets, running a Court-approved sale process and negotiating the Sale of substantially of the Debtors' assets to Foundation for $33,000,000.00.

## Factors Supporting the Allowance of Compensation

14.     The Court authorized H2C's retention pursuant to 11 U.S.C. § 328(a) of the Bankruptcy Code [Doc. No. 278].  Section 328 of the Bankruptcy Code allows a professional seeking to represent a bankruptcy estate to obtain prior court approval of its compensation plan. Section 328 provides that once a compensation plan has been approved by the bankruptcy court, "the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *In Re Barron*, 325 F.3d 690, 692-93 (5th Cir. 2003).

15.     In this case, there were no intervening circumstances that were incapable of

5215271v2

anticipation by the Bankruptcy Court at the time it approved the compensation. Accordingly, H2C is entitled to compensation according to the fee structure previously approved by this Court. *Id*.

**DATED: January 5, 2016**

Hammond Hanlon Camp, LLC

By: *[signature: T M Barry]*
Thomas M. Barry
Principal

Respectfully submitted by:

**PORTER HEDGES, LLP**
*/s/ Joshua W. Wolfshohl*
John F. Higgins
State Bar No. 09597500
Joshua W. Wolfshohl
State Bar No. 24038592
Aaron J. Power
State Bar No. 24058058
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248

**Counsel for Debtors and Debtors in Possession**

5215271v2