

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
01/12/2016

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Chapter 11 |
| UNIVERSITY GENERAL HEALTH | § | |
| SYSTEM, INC., et al., | § | Case No. 15-31086 |
| | § | |
| Debtors.[1] | § | Jointly Administered |
| | § | |

ORDER CONFIRMING
JOINT CHAPTER 11 PLAN OF LIQUIDATION
(RELATES TO DOC. NO. 732)

Pursuant to this Court's Order (1) Approving Disclosure Statement in Support of Chapter 11 Plan of Liquidation; (2) Scheduling Plan Confirmation Hearing; (3) Establishing Voting Deadline and Procedures for Filing Objections to Confirmation of Plan of Liquidation; (4) Approving Form of Ballot; and (5) Establishing Solicitation and Tabulation Procedures (Doc. No. 740) ("Disclosure Statement Order") approving the Debtors' Disclosure Statement in Support of Chapter 11 Plan of Liquidation (Doc. No. 737) (the "Disclosure Statement"), the Court conducted a hearing on January 11, 2016 to consider confirmation of the Debtors' Joint Chapter 11 Plan of Liquidation (Docket No. 732) (the "Plan").[2] After considering the evidence presented and the arguments of counsel, the Court finds as follows:

1.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052, made applicable to this proceeding pursuant to FED. R. BANKR. P. 9014. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

2.      On December 10, 2015, the Debtors mailed to all known Creditors, Interest Holders, the United States Trustee and to all persons that have entered an appearance in this case (i) a CD containing in pdf form the Disclosure Statement, the Plan and the Disclosure Statement Order; and (ii) voting ballots. Proof of service of the foregoing has been filed with the Court and is sufficient (Doc. No. 756). The notice provided by the Debtors satisfies the requirements of all applicable Federal Rules of Bankruptcy Procedure, including, but not limited to, Rules 2002(a),

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: University General Health System, Inc. (2436), UGHS Autimis Billing, Inc. (3352), UGHS Autimis Coding, Inc. (3425), UGHS ER Services, Inc. (6646), UGHS Hospitals, Inc. (3583), UGHS Management Services, Inc. (4100), UGHS Support Services, Inc. (3511), University General Hospital, LP (7964), and University Hospital Systems, LLP (3778).

[2] Except as set forth herein, all capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan or, if not defined therein, the Asset Purchase Agreement (Doc. No. 691) (the "APA").

(b), (c), (d), (j) and (k) and is adequate and proper in all respects under the circumstances of these cases.

3. On December 31, 2015, the Debtors closed the sale of substantially all of their assets to Foundation Surgical Hospital Holdings, LLC pursuant to the APA.

**Jurisdiction and Venue**

4. The Court has jurisdiction over this chapter 11 case and to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334.

5. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) and this Court has jurisdiction to enter a final order with respect thereto.

6. Venue of this case is proper in this District pursuant to 28 U.S.C. §§ 1408(1) and 1409.

7. The Debtors are authorized to be debtors under § 109 of the Bankruptcy Code.

8. All parties (including, without limitation, all taxing authorities and other Governmental Units entitled to notice) required to be given notice of the Confirmation Hearing, including notice of the deadline for filing and serving objections to confirmation of the Plan, have been given proper, timely, and adequate notice in accordance with the Federal Rules of Bankruptcy Procedure and have had an ample opportunity to appear and be heard with respect thereto. No other or further notice is necessary or required.

9. Pursuant to § 1125(d) of the Bankruptcy Code, the Debtors' transmittal of the Plan solicitation packages and their solicitation of acceptances of the Plan are not and will not be governed by or subject to any otherwise applicable law, rule or regulation governing the solicitation or acceptance of a plan of reorganization or the offer, issuance, sale or purchase of securities. Accordingly, the Debtors (and their agents, employees, members and professionals) are entitled to the protection of § 1125(e) of the Bankruptcy Code.

**Voting**

10. Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Orders of this Court.

**The Plan Satisfies the Requirements of the Bankruptcy Code**

11. The Plan complies with all applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1).

12. The Plan is dated and identifies the Debtors as the proponent of the Plan. FED. R. BANK. P. 3016(a). In proposing the Plan, the Debtors have complied with all provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2).

13. The Plan designates and classifies Claims and Interests. 11 U.S.C. § 1123(a)(1). The classification of Claims and Interests under the Plan complies with § 1122 of the Bankruptcy Code. Each Claim and Interest placed in a particular class pursuant to the Plan is substantially similar to the other Claims or Interests, as the case may be, in such class. A reasonable basis exists for the classifications in the Plan.

14. The Plan specifies each class of Claims or Interests that is not impaired under the Plan. 11 U.S.C. § 1123(a)(2).

15. The Plan specifies the treatment of each class of Claims and Interests that is impaired under the Plan. 11 U.S.C. § 1123(a)(3).

16. The Plan provides the same treatment for each Claim or Interest of a particular class, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such particular Claim or Interest. 11 U.S.C. § 1123(a)(4).

17. The Plan provides adequate means for its implementation. 11 U.S.C. § 1123(a)(5).

18. The Plan provides for the assumption and rejection of executory contracts and leases in a manner consistent with the Bankruptcy Code. 11 U.S.C. § 1123(b)(2).

19. The Debtor has complied with the applicable provisions of the Bankruptcy Code, including, without limitation, the disclosure and solicitation requirements under §§ 1125 and 1126 of the Bankruptcy Code. 11 U.S.C. §§ 1129(a)(2), 1125, 1126.

20. The Plan has been proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). The Plan has been proposed for valid business purposes, to effectuate the sale of the Debtors' assets, to satisfy substantial obligations of the Debtors, and to provide relief under Chapter 11 to the Debtors and their Creditors and Interest Holders.

21. All payments made or to be made by the Debtors/Liquidating Trustee under the Plan, for services or for costs and expenses in or in connection with the Case, or in connection with the Plan and incident to the Case, have been approved by the Court or are subject to the approval of the Court as reasonable. 11 U.S.C. § 1129(a)(4).

22. The Debtors have disclosed that Michael D. Warner of Cole Schotz, P.C. will serve as the Liquidating Trustee under the Plan in accordance with 11 U.S.C. § 1129(a)(5). Michael D. Warner is confirmed as the Liquidating Trustee with full authority to carry out the Plan.

23. The Official Committee of Unsecured Creditors has also disclosed that the initial members of the Post-Confirmation Committee under the Plan shall be as follows: (i) Hillair

Capital Management, LP; (ii) Siemens Medical Solutions USA, Inc.; and (iii) Emergency Medical Group, LLC d/b/a Elitecare Emergency Center.

24. The Plan does not alter any rates charged by the Debtors. Therefore, the Plan does not require any governmental approvals. 11 U.S.C. § 1129(a)(6).

25. With respect to each impaired class of Claims or Interests, each holder of an impaired Claim or Interest in such class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. 11 U.S.C. § 1129(a)(7).

26. Each class of Claims and Interests has accepted the Plan (11 U.S.C. § 1129(a)(8)(A)), is not impaired under the Plan (11 U.S.C. § 1129(a)(8)(B)) or the Plan does not discriminate unfairly and is fair and equitable with respect to such class of Claims and/or Interests (11 U.S.C. § 1129(b)(1)).

27. Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that, with respect to a Claim of a kind specified in § 507 of the Bankruptcy Code, on the later of (i) the Distribution Date; (ii) the date on which such claim becomes an Allowed Claim, or (iii) such later date as the Liquidating Trustee and the holder of the Claim shall agree, the holder of such Claim will receive on account of such Claim cash in an amount equal to the Allowed amount of such Claim or deferred cash payments of a value, as of the effective date of the Plan, equal to the Allowed amount of such Claim subject to and in accordance with the terms of the Plan. 11 U.S.C. § 1129(a)(9)(A) and (B).

28. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor except as specifically set forth in the Plan. 11 U.S.C. § 1129(a)(11).

29. The Plan has been accepted by Creditors that hold at least two-thirds in amount and more than one-half in number of the Allowed Claims and Interests that have voted to accept or reject the Plan. 11 U.S.C. § 1129(a)(8).

30. At least one class of Claims that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any Insider. 11 U.S.C. § 1129(a)(10).

31. The Debtors, with the exception of University General Hospital, LP (which was sold pursuant to the Sale Order), will be responsible for payment of United States Trustee quarterly fees incurred on disbursements by or on behalf of the Debtors pre-confirmation and will pay same on the effective date of the plan before transfer of assets to the Liquidating Trustee. The Debtors will file monthly operating reports through the fourth quarter of 2015 and for any months or portion of months prior to confirmation of the plan. Funds transferred by the Debtors to the Liquidating Trustee or Liquidating Trust will not be considered a disbursement for UST quarterly fee purposes. The Liquidating Trustee will be responsible for timely reporting

and payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6) post-confirmation. The Liquidating Trustee will file one report of quarterly disbursements made on behalf of the post-confirmation debtors for every quarter or portion thereof that any of the debtors bankruptcy cases remain open. The Liquidating Trustee will pay United States Trustee quarterly fees based on quarterly disbursements made by the Liquidating Trustee until all cases are closed by the Court.

32. The Debtors do not have obligations for the payment of retiree benefits, making § 1129(a)(13) of the Bankruptcy Code irrelevant. 11 U.S.C. § 1129(a)(13).

33. All applicable requirements of §1129(a) of the Bankruptcy Code have been met.

34. The modifications and clarifications made herein to the Plan do not cause the Plan to fail to meet the requirements of §§ 1122 and 1123 of the Bankruptcy Code and, pursuant to § 1127 of the Bankruptcy Code, do not adversely change the treatment of any Claim of any Creditor or the Interest of any Interest Holder who has not accepted the modification. FED. R. BANKR. P. 3019.

35. The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933, as amended.

Accordingly, it is hereby **ORDERED THAT**:

**Confirmation of the Plan**

36. The Plan, a copy of which is attached hereto as **Exhibit 1**, as modified herein, is confirmed in all respects, regardless of whether specific reference is made herein to a particular article, paragraph, exhibit or provision of the Plan. The terms of the Plan are incorporated by reference into, and are an integral part of, this Order.

37. The Debtors, the Liquidating Trust and the Liquidating Trustee are authorized and directed to implement the Plan in accordance with the terms thereof and to take any and all actions contemplated to be taken under the Plan.

38. The appointment of the Liquidating Trustee and the membership of the Post-Confirmation Committee are approved in all respects and such parties are authorized to carry out their rights and duties as set forth in the Plan.

39. The provisions of the Plan and this Order are binding on the Debtors, the Liquidating Trust, the Liquidating Trustee and any holder of a Claim or Interest, whether or not the Claim or Interest is Impaired under the Plan and whether or not the holder of such Claim or Interest has accepted the Plan. All objections to confirmation of the Plan that have not been withdrawn prior to the entry of this Order or that are not cured by the relief granted herein are overruled in all respects. All withdrawn objections are deemed withdrawn with prejudice.

40. On the Effective Date, the Debtors and the Liquidating Trustee are authorized to consummate the Plan and the transactions contemplated thereby.

**Executory Contracts and Unexpired Leases**

41. On the Effective Date, all executory contracts and unexpired leases that are not assumed under the Plan and APA are rejected, unless otherwise dealt with by the Plan or this Order, or any other Order of the Court entered prior to the Effective Date, or which is the subject of a motion to assume pending on the Effective Date.

42. Notwithstanding anything to the contrary in Paragraph 41, upon entry of this Order, University General Hospital, LP, has agreed to assume the following agreements: (i) Lease Agreement 50805US dated July 24, 2013, by and between Beckman and UGH, LP; (ii) Reagent Agreement 10323US dated July 13, 2006, amended December 11, 2012, by and between Beckman and UGH, LP; and (iii) Reagent Agreement 10307US dated July 13, 2006, amended December 11, 2012, by and between Beckman and UGH, LP (collectively, "Agreements"). The Debtors and Foundation Surgical Hospital Holdings, LLC shall take all actions necessary to consummate the assumption of the Agreements following the entry of this Order, provided that the Debtors' estates and the Liquidating Trust shall have no liability for any cure payments related to the assumption and assignment.

43. Damages arising from the rejection of an executory contract or unexpired lease shall be a General Unsecured Claim against the Debtors unless subordinated under applicable law. Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be asserted in a proof of claim filed with the Bankruptcy Court no later than 30 days following the earlier of: (a) the date of entry of an order of the Bankruptcy Court approving such rejection, or (b) the Effective Date of the Plan. Any Claims not filed within such times shall be forever barred from assertion against the Debtors, the Liquidating Trust or the Liquidating Trustee. The Liquidating Trustee shall mail a notice to all known affected parties of (i) the Debtors' rejection of executory contracts and unexpired leases and (ii) the deadline for asserting claims for damages arising from the rejection of such executory contracts and unexpired leases.

**Miscellaneous**

44. The secured *ad valorem* tax claim of Harris County shall be paid in full, including interest under 11 U.S.C. § 506(b) on its tax claims from the petition date through the confirmation date at the rate of 12% per annum, including post-confirmation interest from the confirmation date until paid in full at the rate of 12% per annum. Harris County shall retain all liens they currently hold on any property of the debtors until they receive payment in full of all amounts owed to them under the provisions of this Plan.

45. The Liquidating Trustee shall reserve the amount of $250,000 as part of the Disputed Claims Reserve on account of the administrative claims asserted by SysInformation Healthcare Service, LLC d/b/a EqualizeRCM ("EqualizeRCM") in Adversary Proceeding No. 15-3237. Such amount shall be held in the Disputed Claims Reserve pending a final and non-appealable resolution of Adversary Proceeding No. 15-3237 or as otherwise agreed by

EqualizeRCM and the Liquidating Trustee.

46. Nothing contained in the Plan, specifically including Sections 11.2, 11.3, or 11.4, or this Order shall release, waive, or enjoin the prosecution of any claims or causes of action held by EqualizeRCM against any former director, officer, shareholder, or employee of the Debtors arising out of any contractual or business relationship between the Debtors and EqualizeRCM; any contractual, business, or employment relationship between such individuals and EqualizeRCM; and/or the factual allegations contained in Adversary Proceeding No. 15-3237.

47. The Facilities Agreement ("Facilities Agreement") between University General Hospital, LP and Texas HealthSpring, LLC ("HealthSpring") is assumed as of the Effective Date; provided, however, that, notwithstanding anything contained in this Order to the contrary: (i) the Cure Costs due on account of such assumption shall be $257; and (ii) any obligations accruing under the Facilities Agreement on or after November 1, 2015, shall pass through and survive assumption and Plan confirmation so that nothing in this Order shall affect HealthSpring's rights of recovery and/or recoupment for any overpayments accruing on or after November 1, 2015, or any defenses with respect thereto. The parties to the Facilities Agreement reserve all of their respective rights under such agreement for matters accruing after November 1, 2015.

48. The Hospital Services Agreement ("Provider Agreement") between University General Hospital, LP and Cigna HealthCare of Texas, Inc. ("Cigna") is assumed as of the Effective Date; provided, however, that, notwithstanding anything contained in this Order to the contrary: (i) the Cure Costs due on account of such assumption shall be $200,784; and (ii) any obligations accruing under the Provider Agreement on or after November 1, 2015, shall pass through and survive assumption and Plan confirmation so that nothing in this Order shall affect Cigna's rights of recovery and/or recoupment for any overpayments accruing on or after November 1, 2015, or any defenses with respect thereto. The parties to the Provider Agreement reserve all of their respective rights under such agreement for matters accruing after November 1, 2015.

49. Notwithstanding anything contained in the Plan or this Order to the contrary, nothing in the Plan or this Order shall affect any rights of recoupment of any governmental unit (including but not limited to the Texas Health and Human Services Commission ("HHSC") and the Center for Medicare and Medicaid Services ("CMS")) or any exercise by a governmental unit thereof as to the Debtors or Foundation Surgical Hospital Holdings, LLC for any overpayments under the Medicare and Medicaid provider agreements assigned to Foundation Surgical Hospital Holdings, LLC and identified after confirmation of the Plan, but the Debtors and/or Foundation Surgical Hospital Holdings, LLC shall retain their rights to exhaust administrative and judicial remedies to contest the dollar amount of any recoupment(s) effectuated. For the avoidance of doubt, nothing in the Plan or this Order shall limit, create or enlarge any recoupment rights of HHSC or CMS or any rights or defenses of the Debtors or Foundation Surgical Hospital Holdings, LLC with respect thereto.

50. Notwithstanding anything else to the contrary in the Plan, and for the avoidance of doubt, except for the Cure Costs set forth in paragraph 47 and 48 above, the Liquidating Trust

shall have no liability for pre-confirmation overpayments under any provider agreements of the Debtors that are being assumed pursuant to the Plan and/or Sale Order.

51. Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, these provisions apply to the treatment of the claims of the Texas Comptroller of Public Accounts ("Comptroller") and Texas Workforce Commission ("TWC"): (1) nothing provided in the Plan or this Confirmation Order shall affect or impair any setoff rights of the Comptroller or TWC; (2) nothing provided in the Plan or this Confirmation Order shall affect or impair any rights of the Comptroller or TWC to pursue any non-debtor third parties for tax debts or claims; (3) nothing provided in the Plan or this Confirmation Order shall be construed to preclude the payment of post-effective date interest on the Comptroller or TWC's priority or administrative expense tax claims; (4) to the extent that interest is payable with respect to any claim of the Comptroller of TWC, the interest rate shall be 4.5% per annum; and (5) the Comptroller and TWC are not required to file a motion or application for payment of administrative expense claims; the Comptroller and TWC's administrative expense claims are allowed upon filing, subject to objection on substantive grounds.

52. Nothing contained in the Plan or this Order shall (i) enjoin or impair any claims that Jacinto Surgery Management, LLC, Paradise Marketing & Consulting L.P., Garth/201 Holdings LP, and/or Jacinto Medical Group, P.A. may have against any non-debtors; or (ii) modify or invalidate the Order Approving Second Application to Compromise Controversy with Jacinto Surgery Management, LLC, Garth/201 Holdings, LP, Jacinto Medical Center, LP and Jacinto Medical Group, P.A. (Docket No. 725), which shall remain in full force and effect.

53. Notwithstanding anything else in the Plan or Confirmation Order, no claims held by or on behalf of Dr. Kenneth Reed, Reed Migraine Centers of Texas, PLLC or Neuro Stim Technologies, LLC (collectively, the "Reed Claimants") against any non-Debtor or any guarantors of any claims by the Reed Claimants against any Debtor (the "Non-Debtor Parties") of a debt or claim incurred or owed by a Debtor (the "Reed Claims") shall be released, compromised, enjoined or otherwise impacted in any way, except that payments made on account of claims against the Debtor (whether from the Debtor or a Non-Debtor Party) shall be credited dollar-for-dollar against the Reed Claims. Specifically, any payments made to the Reed Claimants on account of the Reed Claims shall be honored as a credit to any other obligor on the same debt commensurate with the amount that is actually paid. Nothing herein shall entitle the Reed Claimants to a double recovery with respect to the Reed Claims. The Reed Claims also include any claims against Non-Debtor Parties regarding or arising under that Services Agreement dated May 1st, 2012 by and between University General Hospital, LLP and Neuro Stim Technologies, LLC, that certain Confidential Settlement Agreement dated August 11, 2014 by and among several of the Debtors, the Reed Claimants and Non-Debtor Parties, and any claims related to marketing of migraine treatment services by Advanced Migraine Relief and Treatment Center, LLC. Notwithstanding anything else in the Plan or Confirmation Order, to the extent any of the Reed Claims are covered by any insurance policy, such rights to the insurance proceeds of such applicable policy, shall not be transferred to the Liquidating Trust, but shall remain available to the Reed Claimants for recovery on the Reed Claims.

54. Nothing contained in the Plan or this Order shall enjoin or impair any rights,

claims or defenses that Hillair Capital Investments, LP or its affiliates may have against any non-debtors herein.

55. Pursuant to § 1146 of the Bankruptcy Code, any issuance, transfer, or exchange of any security under the Plan or the making or delivery of any instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or other similar tax.

56. For good cause shown, the limitations of Rule 6004 of the Federal Rules of Bankruptcy Procedure are waived. This Order is not stayed and shall become effective immediately upon its entry. The Effective Date of the Plan shall be determined by the Liquidating Trustee in accordance with the terms of the Plan.

57. The failure to reference or discuss any particular Plan provision in this Order shall have no effect on the validity, binding effect and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as provisions of the Plan expressly approved herein.

58. Subject to the further provisions of Article 8 of the Plan, unless otherwise ordered by this Court, the Liquidating Trustee shall file and serve all objections to Claims and Equity Interests no later than (i) 120 days after the later of (a) the Effective Date; or (b) the date on which a proof of claim, proof of interest or request for payment is filed with the Bankruptcy Court or (ii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

59. The provisions of this Order are integrated with each other and are nonseverable and mutually dependent.

60. This Order is hereby declared to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

61. The Debtors, Liquidating Trustee and the Liquidating Trust are authorized pursuant to § 1142(b) of the Bankruptcy Code to (i) take all action which requires the approval of this Court to effect the Plan; and (ii) issue, execute, deliver, file or record any documents, and to take any action necessary or appropriate to implement, effectuate and consummate the Plan, and the matters contemplated by this Order, in accordance with their respective terms, whether or not specifically referred to in the Plan or any exhibit thereto and without further application to or order of this Court.

62. Notwithstanding anything to the contrary in the Plan, with the exception of the complete discharge granted to University General Hospital, LP under Article 11.3, the limited discharge granted to the other Debtors (other than University General Hospital, LP) shall not be a discharge from any obligation to the United States of America that is otherwise non-dischargeable pursuant to 11 U.S.C. §1141.

63. The third party releases granted in connection with the satisfaction of the Pre-

Petition Federal Payroll Tax Claim based on the assignment and payment in full of the IRS Installment Note, including any releases granted pursuant to Articles 11.2 and 11.3 of the Plan in favor of non-debtor third parties, shall not (i) release any third party from any claim held and/or asserted by a governmental department of the United States of America, other than the IRS, for claims unrelated to the Pre-Petition Federal Payroll Tax Claim; or (ii) release any third party from any criminal liability that might be pursued by the United States Government, including the IRS.

64. The Pre-Petition Federal Payroll Tax Claim shall constitute an Allowed Claim under this Plan, not subject to dispute, and shall be fully satisfied by the assignment and payment in full of the IRS Installment Note. Provided that the IRS Installment Note is paid in full, the Debtors and all of their current professionals, agents, attorneys, accountants, officers, directors, managers and employees, including but not limited to: (i) Dr. Hassan Chahadeh, (ii) Edward Laborde, Jr., (iii) Kris Trent, and (iv) Christopher Schellberg (collectively, the "Released Parties"), shall be released and forever discharged from the Pre-Petition Federal Payroll Tax Claim and all amounts related thereto. The foregoing shall not release or discharge any liability of former officers, directors or employees of the Debtors, including but not limited to Michael Griffin, or any non-Debtor Affiliates who are not Released Parties. Notwithstanding any other provision of this Order or the Plan, the Liquidating Trust shall have no liability to the IRS on account of the Pre-Petition Federal Payroll Tax Claim and shall have no liability to any other party in connection with their liability for or payment of any portion of the Pre-Petition Payroll Tax Claim, including but not limited to the Released Parties, Michael Griffin, or any non-Debtor Affiliates.

65. As long as the IRS Installment Note is not in payment default, the IRS shall not resume or commence any Legal Proceedings regarding the Pre-Petition Federal Payroll Tax Claim, other than criminal proceedings (if applicable), against the Released Parties. However, notwithstanding anything contained in the Plan to the contrary, if the IRS Installment Note is not paid in full, or is in payment default and such default has not been cured, the IRS may exercise any and all rights and remedies it may have: (i) under the IRS Installment Note against the maker under the IRS Installment Note; and/or (ii) against non-debtor third parties.

66. Notwithstanding anything contained in the Plan to the contrary, the IRS shall have 120 days from the Effective Date to amend any claim it asserts for income tax liability. The IRS may seek to extend this deadline by motion with the Bankruptcy Court.

67. Notwithstanding the terms of the Plan and for clarification purposes, the Liquidating Trust Assets (as defined in the Liquidating Trust Agreement) shall include, without limitation, any and all claims and rights that the Debtors have or may have against all of the Debtors' current and former officers, directors, and shareholders (including parties listed on Plan Exhibit 2) provided that such claims and rights or causes of action arose before the Petition Date, and any and all Causes of Action, Rights of Action and/or claims for relief that the Debtors may have against (i) any insurance and/or insurance policies in which either the Debtors and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers; (ii) any recipient of any transfer identified in the Debtors' statements of financial affairs, including any amendments thereto, filed in these Chapter

11 Cases based on Causes of Action under chapter 5 of the Bankruptcy Code; and (iii) the parties set forth on the Attached Plan Exhibit 2 based on any Causes of Action, Rights of Action, Avoidance Actions or claims for relief that arose prior to the Petition Date.

68. In accordance with Section 3.1.1 of the Plan, the Administrative MidCap Secured Claim was paid in full at the Closing of the Foundation Sale. In connection with this payoff, the Debtors and MidCap entered into that certain payoff letter agreement dated as of December 31, 2015 (the "Payoff Letter Agreement"). Nothing in the Plan or this Order affects the Payoff Letter Agreement or the terms of the DIP Order, both of which remain in full force and effect. Without limiting the foregoing, the rights reserved by MidCap under the Payoff Letter Agreement (including with respect to the "Surviving Obligations" described therein) are fully preserved under the Plan and this Order, without any further action by MidCap.

69. The Liquidating Trustee may destroy or otherwise abandon any files, documents or electronic information following the expiration of twenty-one (21) days from the date that a notice of intent to destroy and/or abandon such records is filed with the Court. If an objection is filed, the Liquidating Trustee shall not destroy and/or abandon such files, documents or electronic information until the Bankruptcy Court has considered the objection.

70. Notwithstanding anything to the contrary on the Plan, the Liquidating Trustee shall not be deemed a responsible person of the Debtors and shall not be required to wind down, dissolve or take any other action on behalf of the Debtors or their affairs. For avoidance of ambiguity, the Liquidating Trustee shall only be required to administer the Liquidating Trust and act on behalf of the Liquidating Trust Beneficiaries. Section 7.3 of the Plan is hereby deleted.

71. The Clerk shall promptly serve notice of the entry of this Order pursuant to Rule 2002(f)(7) of the Federal Rules of Bankruptcy Procedure on all Creditors, Interest Holders and other parties in interest. The Liquidating Trustee shall mail a copy of this Order and Notice of the Effective Date to all known holders of Claims and Equity Interests (which have not become Disallowed as of the date of mailing). Such notice shall be mailed within 5 Business Days of the Effective Date. In addition, notice of the entry of the Effective Date shall be published in the Houston Chronicle, which publication shall constitute constructive notice of the Effective Date.

72. After the date of this Order, this Court shall retain jurisdiction over the Chapter 11 Case according to applicable law, including jurisdiction to interpret and enforce the provisions of this Order.

SIGNED this _11_ day of January, 2016.

THE HONORABLE LETITIA Z. PAUL,
UNITED STATES BANKRUPTCY JUDGE