UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § | Confirmed Chapter 11 |
| | § | |
| **UNIVERSITY GENERAL HEALTH** | § | Case No. 15-31086 (DRJ) |
| **SYSTEM, INC.** *et al.*,[1] | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | |

**LIQUIDATING TRUSTEE'S MOTION FOR AN ORDER (I) (A) AUTHORIZING FINAL DISTRIBUTIONS TO HOLDERS OF ALLOWED GENERAL UNSECURED CLAIMS AND APPROVING FINAL ACCOUNTING AND (B) ENTERING FINAL DECREE CLOSING CHAPTER 11 CASES AND APPROVING DISSOLUTION OF THE <u>LIQUIDATING TRUST; AND (II) GRANTING RELATED RELIEF</u>**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JANUARY 29, 2021 AT 1:00 P.M. IN COURTROOM 400, 515 RUSK, HOUSTON, TX 77002. YOU MAY PARTICIPATE BY AUDIO/VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691.**

**YOU MAY VIEW VIDEO VIA GoToMeeting. TO USE GoToMeeting, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GoToMeeting APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGE JONES" IN THE GoToMeeting APP OR CLICK THE LINK ON JUDGE JONES' HOMEPAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC**

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: University General Health System, Inc. (2436); UGHS Autimis Billing, Inc. (3352); UGHS Autimis Coding, Inc. (3425); UGHS ER Services, Inc. (6646); UGHS Hospitals, Inc. (3583); UGHS Management Services, Inc. (4100); UGHS Support Services, Inc. (3511); University General Hospital, LP (7964); and University Hospital Systems, LLP (3778).

**APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE JONES. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE DAVID R. JONES, CHIEF UNITED STATES BANKRUPTCY JUDGE:

Michael D. Warner, the Liquidating Trustee (the "**Trustee**") for University General Health System, Inc., *et al.* (the "**Debtors**"), pursuant to the *Joint Chapter 11 Plan of Liquidation* [Docket No. 799] (the "**Plan**"), as confirmed pursuant to that certain *Order Confirming Joint Chapter 11 Plan of Liquidation* [Docket No. 799] (the "**Confirmation Order**" and, together with the Plan, the "**Plan Documents**"), and that certain Liquidating Trust Agreement, entered into on February 4, 2016 (the "**Liquidating Trust Agreement**"), hereby files this *Motion for an Order (I)(A) Authorizing Final Distributions to Holders of Allowed General Unsecured Claims and Approving Final Accounting and (B) Entering Final Decree Closing Chapter 11 Cases and Approving Dissolution of the Liquidating Trust; and (II) Granting Related Relief* (the "**Motion**") seeking entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"). In support of the Motion, the Trustee submits the *Declaration of Michael D. Warner in Support of Motion for an Order (I)(A) Authorizing Final Distributions to Holders of Allowed General Unsecured Claims and Approving Final Accounting and (B) Entering Final Decree Closing*

2

*Chapter 11 Cases and Approving Dissolution of the Liquidating Trust; and (II) Granting Related Relief* (the "**Declaration**"), attached hereto as **Exhibit B**, and respectfully represents:[2]

### I. JURISDICTION AND PREDICATES FOR RELIEF

1. The Bankruptcy Court for the Southern District of Texas (this "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and Section 12.1 of the Plan.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409, Paragraph 72 of the Confirmation Order, and Section 12.1 of the Plan.

3. In addition, the Trustee makes this Motion pursuant to Paragraph 61 of the Confirmation Order, which authorizes, *inter alia*, "the Liquidating Trustee to (i) take all action which requires the approval of this Court to effect the plan; and (ii) . . . take any action necessary or appropriate to implement, effectuate and consummate the Plan . . . whether or not specifically referred to in the Plan. . ."

4. The bases for the relief requested herein are 11 U.S.C. §§ 105(a), 305(a) and 1142 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### II. BACKGROUND

**A.     The Chapter 11 Cases and Creation of the Trust**

5. On February 27, 2015, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code. By Order dated March 2, 2015, the Debtors' cases were jointly administered (collectively, the "**Cases**"). *see* Docket No. 43.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or Liquidating Trust Agreement, as applicable.

54892/0002-21518683v3

6. On December 3, 2015, the Debtors filed the Plan. Pursuant to Article 7.2 of the Plan, a Liquidating Trust was created on the Plan's Effective Date, February 4, 2016 (the "**Effective Date**"), to be managed by a Liquidating Trustee (as those terms are defined in the Plan).

7. On January 11, 2016, the Official Committee of Unsecured Creditors filed a *Notice of Designation of Liquidating Trustee*, pursuant to which Michael D. Warner was designated Liquidating Trustee of the Liquidating Trust created by the Liquidating Trust Agreement (the "**Liquidating Trust**"). *see* Docket No. 794. On the same date, the Court confirmed the Plan and on January 12, 2016 that certain Confirmation Order, confirming and modifying certain provisions of the Plan, was entered.

8. On February 4, 2016, the Plan became effective. *see* Docket No. 835.

9. Article 7, Section 7.4 of the Plan expressly provides, "The Liquidating Trustee is authorized and shall have the obligation to take all such actions as in his/her judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following…Supervise and administer the resolution, settlement and payment of Claims and Interests and distributions to the holders of Allowed Claims and Allowed Interests in accordance with this Plan."

    **B.**    **The Trust Administration and Claims Reconciliation Process**

10. Pursuant to the Confirmation Order, the Trustee originally had 120 days from the Effective Date, *to wit*: until June 3, 2016 (the "**Claim Objection Deadline**"), to object to all "**Claims**" – which includes priority claims, general unsecured claims and equity interests (collectively, the "**Claims and Interests**"). *See* Plan, ¶ 8.1; *see also* Confirmation Order, ¶ 58.

11. The Claim Objection Deadline has since been extended by Orders of the Court through March 1, 2021. *See* Docket No. 1450.

12. The official claims register, prepared and maintained by the Debtors' claims agent (and the Trustee's claims agent), reflects that over 1,900 proofs of claim were filed against the Debtors' estates, and that such claims, coupled with the claims scheduled by the Debtors, represented in the aggregate in excess of $325 million in Non-Priority General Unsecured Claims.

13. Since his appointment, the Trustee has, *inter alia*:[3]

    a. Held periodic meetings with the Post-Confirmation Committee to review the operations of the Liquidating Trust, discuss administration of the Liquidating Trust, and to approve distributions.

    b. Resolved each timely asserted request for the payment of administrative expense claims (each an "**Administrative Claim**"), including obtaining substantial concessions from claimants thereby preserving hundreds of thousands of dollars for the Debtors' Estates;[4]

    c. Distributed approximately $1.1 million on Allowed Cure[5] and Administrative Claims, *see* Docket No. 1306;

    d. Made quarterly payments to the United States Trustee, pursuant to the Confirmation Order;

---

[3] The following is short summary of the issues and matters that have been addressed by the Trustee, significantly more details are in the Court's Docket.

[4] While the Plan proposed that the Trustee was to make distributions to Allowed Administrative Claims, and thus review and object as necessary, the funds originally turned over to the Trustee pursuant to the Plan, at the Effective Date, were insufficient to pay all Allowed Administrative Claims, unpaid priority and cure claims, and thus the Trustee's post-Effective Date efforts to recover assets, were necessary to pay such claims. The situation the Liquidating Trust and the Trustee were faced with on the Effective Date was such that the Liquidating Trust was essentially administratively insolvent – with an inability to pay Administrative Claims, Priority Claims and cure claims (a situation a post-confirmation trust is not normally faced with). The Trustee's efforts changed that Effective Date situation. More specifically, as demonstrated by Exhibit C hereto, upon the Effective Date, the Debtors turned over to the Trust $2,368,088.63; follow the Trustee's successful efforts to reduce Pre-Effective Date Administrative Claims (both professionals and others), Pre-Effective Date Priority Claims, and Pre-Effective Date Cure Claims, the Trustee distributed $4,308,779.32 (which amount was almost $2 million more than was provided to the Trust upon the Effective Date). These distributions would not have been possible, without the recovery of assets of the Trust.

[5] As noted in footnote 4, *supra*, at the time of the Effective Date, the Debtors had not paid all cure obligations arising as part of the assumption and assignment of an executory contract as part of the sale of assets that occurred before the Effective Date. Further, the funds turned over to the Liquidating Trust on the Effective Date were not sufficient to pay such cure claim, without directly affecting the asserted Administrative Claims, and thus the Trustee's efforts were necessary to recover additional funds to pay all such obligations (Administrative Claims, Priority Claims and cure claims).

  e. Paid the priority claim of $985,705.24 to Harris County, a duly organized political subdivision of the State of Texas, on account of and in full satisfaction of the secured *ad valorem* tax claims filed by Harris County;

  f. Pursued litigation against the Debtors' directors and officers, resulting in the receipt of gross settlement proceeds of $2.5 Million;

  g. Recovered $300,000 which had been held in escrow pursuant to the Foundation Purchase Agreement;

  h. Reclassified nearly $250,000 in priority claims, *see* Docket No. 1342;

  i. Successfully objected to approximately $1 million in claims which sought to be treated as Section 503(b)(9) Administrative Claims, *see* Docket No. 1314;

  j. Successfully expunged nearly $175,000 in Priority Claims, *see* Docket No. 1339;

  k. Successfully reclassified or disallowed the remaining non-governmental Priority Claims, *see* Docket Nos. 1408, 395, 1477, and 1483;

  l. Resolved all of the remaining asserted governmental Priority Claims, *see* Docket Nos. 1413 and 1414;

  m. Successfully expunged more than $165 million in Non-Priority General Unsecured Claims on basis that claims (i) failed to provide sufficient documentation to support the asserted claim amounts, (ii) that claims were duplicates, or (iii) that claims were based upon equity interests.  *see* Docket Nos. 1442, 1443, 1444, 1476, 1480, 1482, and 1484; and

  n. Successfully estimated at $0.00 all remaining unliquidated or undetermined claims.  *see* Docket No. 1467.

14. Based on the Trustee's efforts, there remains approximately, $174 million in Allowed Non-Priority General Unsecured Claims remaining following his successful claims objections.

15. Importantly, on March 20, 2020, the Trustee received authority to make distributions to holders of allowed general unsecured claims on a *pro rata, pari pasu* basis, without allocating the distribution to a specific Debtor-estate (the "**Distributions Order**"). S*ee* Docket No. 1422.

54892/0002-21518683v3

16. The Trustee has administered the Liquidating Trust while balancing the practical realities, including the limited remaining cash, of the Liquidating Trust. One such practical reality considered by the Trustee and the Post-Confirmation Committee, is the cost and expense of reviewing (including comparing the filed claims to the Debtors' historical books and records, filing objections and litigating objections) in excess of 1,300 filed/scheduled general unsecured claims, of which 1,226 assert amounts less than $1 million.[6] After consultation with the Post-Confirmation Committee, the Trustee has concluded that there are no additional assets of value to administer under the Liquidating Trust and that no addition claims against the estates should be resolved.[7]

---

[6] The figure of $1 million is used by way of example. As noted below, the Trust is holding roughly $917,000 in distributable funds, and the anticipated distribution to general unsecured creditors is approximately ½ cent on a $1 of Allowed General Unsecured Claim, and thus at most, a holder of an Allowed General Unsecured Claim of $1 million would receive would be approximately $5,000. By way of further example of the lack of utility of pursuing additional objections to claims, the following should be considered: (a) as of the date of this Motion there is approximately $917,000 to be distributed (the Distribution Balance defined below); (b) if the Trustee were to expend an additional $40,000 in legal fees and costs to object to additional claims (if objections are determined warranted after a further review); (c) assuming the Trustee were to extinguish an additional $25 million in general unsecured claims (a lofty goal); (d) then the Trust would have $877,000 as a Distributable Balance ($917,000 - $40,000); (e) then the Non-Priority Allowed General Unsecured Claims (defined below) to receive a distribution would be $148.7 million ($173.7 million less $25 million – see Exhibit D, hereto); and (f) thus the Distribution Percentage would move from .5280% (slightly more than ½ a cent on a dollar of an allowed claim), to .5898% (a movement of approximately .0619%, which is approximately 6 cents on a $100 claim). This additional legal effort does not take into account the time delay of potentially pursuing such additional objections. The Trustee and the Post-Confirmation Committee believe that the time and expenses to review, and as necessary object, to such quantity of small (although $1 million is not a small claim) potential distribution claims, warrants, not undertaking such review and objection efforts. This issue becomes exponentially acute, as the amount of the asserted claim becomes smaller in amount. The forgoing is not to suggest that the Trustee has not eliminated many claims that are either on their face objectionable, or factually objectionable. In fact, as noted above many claims have been objected to and disallowed by Orders of the Court. In addition, not just *low hanging fruit* has been reviewed and objected to. It is the practical necessity of a liquidation that such decisions not to continue the objection process has been made.

[7] Section 8.5 of the Plan provides that "any proof of claim filed by the holder of such claim after the Bar Date is hereby disallowed." Similarly, the Plan provides that the holders of secured claims "shall receive either (i) the proceeds of the Collateral securing such Claimant's Allowed Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Claimant's Allowed Secured Claim; or (ii) the Collateral securing such Claimant's Allowed Secured Claim in full and final satisfaction of such Claim." Pursuant to these provisions, the Trustee submits that all late filed claims and all asserted secured claims are effectively resolved, and that no distribution shall be made to such late filed claims, or Secured Claims, and the Order approving this Motion so proposes. Notwithstanding the provisions of the Plan providing that Post-Effective Date Notice of events in the Cases are only to be served upon parties that have filed new/renewed Requests for Notice, this Motion has been served on all parties that have filed, prior to the Bar Date, alleged Secured Claims or late filed claims.

###     C.      Final Accounting and Distributions

17.     Section 2.3 of the Liquidating Trust Agreement provides that, upon termination of the Liquidating Trust, the Trustee shall file with the Court a final accounting setting forth the amount he has collected and disbursed, and the fees and expenses incurred in administering the Liquidating Trust.  Section 2.3 further provides that the Trustee shall seek issuance of orders necessary to approve such accounting and discharge from all liability for acting as Trustee under the Plan and the Liquidating Trust.

18.     By this Motion the Trustee asserts that only Allowed General Unsecured Claims remain for distribution of the funds remaining in the Liquidating Trust.  More specifically, all: (a) Allowed Administrative Claims (other than those incurred in the administration of the Liquidating Trust); (b) Allowed Cure Claims; and (c) Allowed Unsecured Priority Claims, have been paid in full, and no such claims remain due and owing the by the Liquidating Trust.  In addition, as noted in Footnote 7, Late Filed and Secured Claims are deemed either disallowed or satisfied (without distribution from the Liquidating Trust), respectively.

19.     Since the Effective Date, the Trustee has made distributions in the aggregate amount of $8,106,067.25 and is currently holding a balance in the Liquidating Trust in the aggregate amount of $996,262.00.  After payment of fees to the Trustee, professional fees and the estimated final costs of administration of the Liquidating Trust (including costs of distributions, accounting, United States Trustee's Fees, and all related wind-down costs of the Trust),[8] a balance of approximately, $917,000 will remain for a final *pro rata* distribution to Allowed Non-Priority General Unsecured Claims (the "**Distribution Balance**"). An accounting of all amounts received

---

[8] The Trustee has also paid for storage costs in full through the end of April, 2020 which payment amount is incorporated into the remaining balance.

and distributed by the Trustee to date, as well as expected distributions in advance of distribution to holders of Allowed General Unsecured Claims – resulting in the Distribution Balance, is set forth in **Exhibit C**.

20. The Trustee believes he is now in a position to make final distributions to the Allowed Non-Priority General Unsecured Claims, file final tax returns, dissolve the Liquidating Trust, and close these chapter 11 cases.

21. Article 8, Section 8.6 of the Plan governs distributions under the Liquidating Trust and provides in the relevant parts that, (i) distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed or at the last known address of such holder if no proof of claim is filed, unless the Trustee is notified otherwise, (ii) the Trustee is not required to make any distributions for less than $25.00, (iii) the Trustee shall file a notice of distribution within ten (10) business days of making such distribution,[9] and (iv) any unclaimed or uncashed distributions revert back to the Liquidating Trust for distribution in accordance with the Plan and claims related thereto are discharged and forever barred.

22. Based on the Distribution Balance, the *pro rata* distribution to Allowed Non-Priority General Unsecured Claims under the Distributions Order is approximately, 0.005280%[10] (or approximately ½ a cent per dollar). Attached as **Exhibit D** is a list of all Allowed Non-Priority General Unsecured Claims and amounts to be paid in the final distributions under this Motion as well as those whose distribution amount is less than $25, and thus, not receiving a distribution (the "**Final Distributions**"). Given the amount available for *pro rata* distribution and the costs

---

[9] The Trustee submits that this provision is satisfied based upon the filing of this Motion.

[10] There are 367 claimants holding claims aggregating $516,232.44 whose pro rata distribution is less than $25 each. The total amount of distributions that would have went to such claimants is $2,734.06. The pro rata distribution percentage increases by only .00002% based on amounts allocated to these claimants being reallocated to the claimants with distributions of more than $25.

9

associated with keeping these Cases open and re-distributing uncashed or returned distribution checks, the Trustee seeks authority to donate any uncashed (after a period of 90 calendar days from the issuance of such check) or returned distribution checks to a charity of his choice – in this case, the Houston, Texas office of the Society for the Prevention of Cruelty to Animals (the "**Houston SPCA**").[11]

### III. RELIEF REQUESTED

#### A. Final Distributions are Authorized Under the Plan, Confirmation Order, Liquidating Trust Agreement, and Orders of this Court

23. The Final Distributions are consistent with the Plan, the Confirmation Order, the Liquidating Trust Agreement, and Orders of this Court, and is therefore appropriate. Section 8.62 provides that "distributions to holders of Allowed Claims will be made to the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if not proof of claim is filed." Section 16.12 governs timing of distributions and provides "all payment and Distributions shall be made on a Payment Date determined by the Liquidating Trustee after consultation with the Post-Confirmation Committee…"

24. The Distributions Order granted the Trustee authority to make distributions to holders of allowed general unsecured claims on a *pro rata, pari pasu* basis, without allocating the distribution to a specific Debtor-estate.

25. In addition, Bankruptcy Rule 3021 provides that "after a plan is confirmed, distribution shall be made to creditors whose claims have been allowed…" Fed. R. Bankr. P. 3021. Pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code, the Court has broad authority to

---

[11] Similarly, any checks previously issued by the Trustee during these cases and not cashed have been re-issued. If such checks are not cashed within 90 days of re-issuance any claims related thereto shall be deemed disallowed and expunged, such claimants shall be forever barred from asserting claims against or seeking distributions from the Liquidating Trust, and the Trustee requests authority to donate such amounts to the Houston SPCA.

issue any order necessary to implement the provisions of the Bankruptcy Code and the Plan. 11 U.S.C. §§ 105(a), 1142(a). Section 1142(b) of the Bankruptcy Code provides that:

> The court may direct the debtor and any other necessary party to executed or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b). The effect of section 1142(b) of the Bankruptcy Code is to provide the Court with a broad jurisdictional grant to implement the terms of a confirmed plan. *See United States Trustee v. Gryphon,* 166 F.3d 552, 556 (3d Cir. 1999) (finding that section 1142(b) "provides that the bankruptcy court may take action to ensure the consummation of a confirmed plan; it does not provide that this is the only action the bankruptcy court may entertain post-confirmation"); *see also* 11 U.S.C. § 105(a) (granting bankruptcy courts broad authority and discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

26. The Trustee, in consultation with the Post-Confirmation Committee has determined that it is appropriate to make the Final Distributions to conclude the Trustee's duties under the Liquidating Trust. The amounts to be distributed by the Final Distributions are consistent with the applicable provisions of the Plan, Liquidating Trust Agreement, and the Bankruptcy Code. Therefore, the Trustee respectfully requests entry of the proposed order to permit the Trustee to issue the Final Distributions and terminate the Liquidating Trust.

**B. The Court Should Authorize Donation of Remaining Assets to Charity**

27. Under Section 8.62 of the Plan, the Trustee has no obligation to make a distribution on account of an allowed claim if the amount to be distributed to the holder of such claim is less

than $25 and constitutes a final distribution to such holder.[12] Further, checks issued in connection with the Final Distributions will become null and void, and the funds held on account thereof subject to redistribution, if such checks are returned as undeliverable or not negotiated within ninety (90) days. Any claims associated with such undeliverable or uncashed checks are deemed discharged and forever barred.

28. Given the *pro rata* distribution amount and the costs associated with re-distribution, the Trustee submits that (i) any and all distributions, including Final Distributions and other distributions to interested parties, made by check on behalf of the Liquidating Trust which remain uncashed or undeliverable for at least ninety (90) calendar days after the date of the check (which date shall be the same date as such check is mailed by or on behalf of the Trustee) be deemed stale (a "**Stale Check**"), (ii) all of the claims of such claimant to which such Stale Check was issued be deemed disallowed and expunged from the claims register, and such claimant be forever barred from asserting claims against or seeking distributions from the Liquidating Trust or the Trustee, (iii) the Trustee shall not be required to issue additional distributions to holders of Allowed General Unsecured Claims of the funds that were otherwise allocated to Stale Checks, and (iv) the Trustee shall not have a duty to reissue any Stale Check. The Trustee requests authority to donate to the Houston SPCA all funds remaining in the Liquidation Trust, including on account of Stale Checks and funds in excess of the projected administrative expenses/costs of the Liquidating Trust (as detailed in Exhibit C).

### C. The Post-Confirmation Committee Should be Dissolved and the Court Should Approve Discharge of Trustee and Post-Confirmation Committee

---

[12] As discussed above, distributions in amount that would otherwise be made in amounts less than $25 will be distributed to other Allowed Non-Priority General Unsecured Creditors that would receive at least a distribution of $25.

12

29.     Section 7.7 of the Plan, provides that "[u]pon Final Distribution, the Post-Confirmation Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from their service as Post-Confirmation Committee members.

30.     In addition, Section 11.4 of the Plan provides that:

> Neither (a) the Debtors, the Liquidating Trustee, Foundation or any of their respective employees, offices, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by [ ] the Debtors, the Liquidating Trustee or Foundation, nor…(d) the Post-Confirmation Committee and each of its members or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional person employed by any of them…shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to the Debtors, the Chapter 11 Cases, or the Estates, including but not limited to, (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering this Plan…or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respect such Protected Persons shall be entitled to rely in good faith upon the advice of counsel.

31.     The Plan was approved by the Confirmation Order.  In addition, without an order discharging such parties from any further liability, the Liquidating Trust would be required to establish some reserve, in an amount that would be difficult to determine, to secure its obligations. Any such reserve would necessarily reduce the amounts available for the Final Distributions. Therefore, the Trustee requests the entry of an order, as requested herein, discharging the Trustee, Post-Confirmation Committee and their respective members, employees, professionals and representatives from any and all claims, causes of action and other assertions of liability brought by all persons, arising out of the discharge of the powers and duties conferred upon them by the Plan and the Trust Agreement from and after the Effective Date, for any act or omission to act,

13

provided that such act or omission does not constitute fraud, willful misconduct, or gross negligence.

32. Therefore (a) dissolution of the Post-Confirmation Committee and (b) discharge and release of the Trustee and Post-Confirmation Committee, and their professionals should be approved.

**D. The Court Should Authorize the Destruction of the Liquidating Trust's Books and Records**

33. Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554. Bankruptcy Rule 6007(a) requires that the trustee provide notice of a proposed abandonment to "the United States trustee, all creditors, indenture trustee, and committees . . . ."

34. The Trustee's power to abandon property is discretionary and the Court will generally defer to the Trustee's judgment in determining whether to abandon a property. *See In re Beach Dev., L.P.*, 2010 WL 3155255, at *4 (Bankr. S.D. Tex. Aug. 10, 2010) (affording deference to the business judgment of the trustee in abandoning property of the estate). The right to abandon property is virtually unfettered, unless (1) abandonment of the property will contravene laws designed to protect public health and safety or (2) abandonment of the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986); *see also In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986) (recognizing that the Supreme Court in Midlantic recognized only a "limited exception" to the debtor's abandonment power). "The court only needs to find the trustee made: (1) a business judgment; (2) in good faith; (3) upon some reasonable basis; and (4) within the trustee's scope of authority." *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) aff'd 112 Fed. Appx. 868 (3d Cir. 2004)).

14

35. The Liquidating Trust will be fully administered upon the Final Distribution as the Trustee, in consultation with the Post-Confirmation Committee has determined there are no further assets to administer and that they believe the time and expenses to continue further claims objections does not warrant such undertaking given the size of the claims pool and amount available for distribution. Therefore, the Trustee has determined that there is no business justification for continuing to incur costs related to warehousing and upkeep of the Liquidating Trust's books and records after the Final Distributions are made. The Trustee proposes to destroy all of the Liquidating Trust's books and records in his possession on or after the ninety-first (91st) day following the date Final Distributions are sent.

### E. The Court Should Close the Chapter 11 Cases Because They Will be Fully Administered Upon the Final Distributions

36. Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered, and the court has discharged the trustee, the court shall close the case." Bankruptcy Rule 3022, which implements section 350 of the Bankruptcy Code, further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

37. The term "fully administered" is not defined in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules. The Advisory Committee Note to Bankruptcy Rule 3022 (the "**Advisory Committee Note**"), however, sets forth the following non-exclusive factors to be considered in determining whether a case has been fully administered:

    a.    whether the order confirming the plan has become final;

    b.    whether deposits required by the plan have been distributed;

    c.    whether the property proposed by the plan to be transferred has been transferred;

15

      d.      whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

      e.      whether payouts under the plan have commenced; and

      f.      whether all motions, contested matters, and adversary proceedings have been finally resolved.

Fed. R. Bankr. P. 3022, Advisory Comm. Note (1991). Courts look "to the advisory committee's notes on Bankruptcy Rule 3022 in seeking guidance as to the meaning of 'fully administered.'" *In re JCP Props., Ltd.*, 540 B.R. 596, 605 (Bankr. S.D. Tex. 2015).

38.    Courts in the Fifth Circuit adopt the view that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before the case is closed." *See, e.g., In re SandRidge Energy, Inc.*, No 16-32488 (DRJ) (Bankr. S.D. Tex. Dec. 31, 2017); *In re AmeriForge Group Inc.*, No. 17-32660 (DRJ) (Bankr. S.D. Tex. Sept. 29, 2017*); In re Valence Tech, Inc.*, No. 12-11580-cag, 2014 Bankr. LEXIS 4429, at *3 (Bankr. W.D. Tex. Oct. 17, 2014) (remarking that "[a]lthough the phrase 'fully administered' is not defined in either the Bankruptcy Code or the Bankruptcy Rules, the 1991 Advisory Committee Notes to Bankruptcy Rule 3022 provide various factors to consider if an estate has been 'fully administered.'"); *In re Idearc Inc.*, No. 09-31828 (BJH) (Bankr. N.D. Tex. Dec. 29, 2011).[13]("[A]ll of the factors in the Committee Note need not be present before the Court will enter a final decree.").

39.    In addition to the factors set forth in the Advisory Committee Note, courts have considered whether the plan of reorganization has been substantially consummated. *See, e.g., In re JCP Props., Ltd.*, 540 B.R. at 605 (commenting that "substantial consummation is the pivotal

---

[13] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these Orders are available upon request of the Trustee's counsel.

question here to determine the propriety of closing the [case]"); *In re Gates Cmty. Chapel of Rochester, Inc.*, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) (considering substantial consummation as a factor in determining whether to close a case); *Walnut Assocs. v. Saidel*, 164 B.R 487, 493 (E.D. Pa. 1994) (same).[14] All of these factors need not be present before a court will enter a final decree. *See, e.g., Walnut Assocs.*, 164 B.R. at 493.

40.     Furthermore, Bankruptcy Courts in the Fifth Circuit have entered final decrees and closed cases despite certain claims being unpaid. *See, e.g., In re Anachoreta, Inc.*, No. 18-36960 (MI) (Bankr. S.D. Tex. Jun. 26, 2020) (entering final decree closing debtors' chapter 11 cases notwithstanding pendency of certain claims); *In re Bristow Group, Inc.,* No. 19-32713 (DRJ) (Bankr. S.D. Tex. Dec. 17, 2019) (same); *In re EXCO Services, Inc.*, No. 18-30167 (MI) (Bankr. S.D. Tex. Nov. 12, 2019) (same)*; In re Westmoreland Coal Company N*o. 18-35672 (DRJ) (Bankr. S.D. Tex. Mar. 27, 2019); *In re SandRidge Energy, Inc.*, No 16-32488 (DRJ) (Bankr. S.D. Tex. Dec. 31, 2017) (same); *In re Valence Tech., Inc.*, No. 12-11580 (CAG) (Bankr. W.D. Tex. Oct. 17, 2014) (same); *In re Idearc Inc.*, No. 09-31828 (BJH) (Bankr. N.D. Tex. Dec. 29, 2011) (same).[15]

41.     The Cases have been "fully administered" within the meaning of section 350 of the Bankruptcy Code, making it appropriate for the Court to enter a final decree closing the Cases. In particular:

    a.     The Confirmation Order has become final and is non-appealable;

---

[14] Section 1101(2) of the Bankruptcy Code defines substantial consummation as the: "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan."

[15] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Trustee's counsel.

      b.      The Plan went effective on February 6, 2016 creating the Liquidating Trust pursuant to which the Trustee was appointed to administer the remaining assets of the Debtors;

      c.      All administrative, secured, and priority claims against the Debtors have been assumed, resolved, reclassified, satisfied, or paid;

      d.      Final distributions to the Allowed Non-Priority General Unsecured Claims against the Debtors are to be paid pursuant to the Distributions Order from the Distribution Balance;

      e.      All motions, contested matters, and adversary proceedings related to the Debtors have been finally resolved.

42.    The Trustee has concluded his administration of the Cases and is prepared to submit final distributions to holders of Allowed Non-Priority General Unsecured Claims.

43.    Based on the foregoing, as of the date that the Final Decree becomes effective according to its terms, the Plan will have been substantially consummated, and the Cases will have been "fully administered." A final distribution will be made within twenty (20) calendar days of entry of the proposed order pursuant to this Motion. While the Trustee acknowledges that the payment of Claims may be pending or uncashed in accordance with the Plan, the Trustee submits that such claims will be paid outside the chapter 11 cases in accordance with the Bankruptcy Code and the Plan. Moreover, "[t]he court should not keep [a] case open only because of the possibility that the court's jurisdiction may be invoked in the future." Fed. R. Bankr. Advisory Comm. Note (1991). Furthermore, the entry of final decrees closing the Cases is without prejudice to creditors' rights to petition the Bankruptcy Court to reopen any of such cases pursuant to section 350(b) of the Bankruptcy Code. Accordingly, closing the Cases is appropriate.

## IV. NOTICE

44. The Trustee has furnished notice of this Motion pursuant to Article 14 of the Plan on all parties who have requested post-Effective Date notice and all parties asserting secured claims against the Debtors' estates.[16]

45. The Trustee respectfully asserts that the requested relief is solely in aid of and in furtherance of the Trustee's duties and obligations to administer the Debtors' assets under the Plan Documents and Liquidating Trust Agreement.

## V. RESERVATION OF RIGHTS

46. The Trustee reserves the right to withdraw this Motion, or make modifications thereto, in the event of objections to this Motion. More specifically, in recognition of the limited amount of the Distribution Balance of (approximately $917,000) and the significant amount of Non-Priority General Unsecured Claims, that have not been objected to by the Trustee (approximately $174 million), the business decision of the Trustee, after consultation with the Post-Confirmation Committee, has been to not object to many of the Non-Priority General Unsecured Claims, in order to maximize the recover to all such holders, without the incurrence of significant time and legal expenses, that would otherwise significantly dissipate any distribution. See, Footnote 6, supra. Thus, the Trustee' reservation of rights includes the right to further object to asserted Non-Priority General Unsecured Claims (including claims otherwise proposed in this Motion to be such Allowed Non-Priority General Unsecured Claims).

---

[16] The Trustee recognizes the many of the Debtors' creditors have not requested post-Effective Date notice. Notwithstanding the foregoing, the Trustee nevertheless asserts that he should be excused from noticing all parties in interest because of the exorbitant costs associated with noticing this Motion pursuant to the pre-Effective Date notice procedures, and that such notice is consistent with the approved Plan provisions. Moreover, the relief requested herein, if granted, does not prejudice any of the creditors and the Trustee has notwithstanding the post-Effective Date notice provision under the Plan, served a Notice of this Motion attached as **Exhibit E** hereto upon (1) all holders of Allowed Non-Priority General Unsecured Claims set forth on Exhibit D, (2) all non-priority general unsecured creditors who filed untimely claims (3) all secured creditors, and (4) all administrative and priority claimants.

54892/0002-21518683v3

## VI. CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Trustee respectfully requests that the Court enter an Order approving this Motion and grant such other and further relief as the Court deems just and necessary under the circumstances.

Respectfully submitted,

Dated: December 21, 2020                By:   */s/ Benjamin L. Wallen*
                                                              Benjamin L. Wallen, Esq.
                                                              (Bar No. 24102623)
                                                              **COLE SCHOTZ P.C.**
                                                              301 Commerce Street, Suite 1700
                                                              Fort Worth, TX 76102
                                                              Tel: (817) 810-5250
                                                              Fax: (817) 810-5255
                                                              Email: bwallen@coleschotz.com

                                                              – and –

                                                              Matteo Percontino, Esq.
                                                              (Admitted *Pro Hac Vice*)
                                                              **COLE SCHOTZ P.C.**
                                                              25 Main Street, Court Plaza North
                                                              Hackensack, NJ 07601
                                                              Tel: (201) 525-6328
                                                              Fax: (201) 678-6328
                                                              Email: mpercontino@coleschotz.com

                                                              *Attorneys for Michael D. Warner,*
                                                              *Liquidating Trustee*